IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-30545

_____

FEDERAL RECOVERY SERVICES, INC.,
United States, ex rel., ET AL.,

Plaintiffs-Appellants,

and

MICHAEL H. PIPER, III and LOUIS R. KOERNER, JR.,

Movants-Appellants,

versus

UNITED STATES OF AMERICA,

Intervenor-Appellee,

and

CRESCENT CITY E.M.S., INC.,
dba Medic One, ET AL.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

December 22, 1995

Before REYNALDO G. GARZA, KING, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This case came with a host of issues attending the question whether Federal Recovery Services, Inc. or Michael Boatright, a minority shareholder of FRS, was a proper party under the False Claims Act, 31 U.S.C. § 3729 et seq. Following oral argument, FRS

settled with the United States for a substantial sum, and the parties agreed to dismiss most of the claims arising in this appeal. FRS's attorneys claim attorneys' fees and expenses under the False Claims Act, 31 U.S.C. § 3730(d), in addition to the substantial fees paid from the settlement proceeds. We are persuaded that FRS lacked standing to prosecute a claim under the False Claims Act and that the district court never had jurisdiction over it. FRS's effort to "amend" and substitute a minority shareholder after the government had intervened was not effective. We affirm the order of the district court dismissing the claim.

I.

On October 8, 1990, Priority E.M.S. sued its competitor, Crescent City E.M.S., Inc., in Louisiana state court, alleging that Crescent City was engaging in unfair trade practices by filing fraudulent claims for reimbursement for ambulance services rendered to individuals not needing them.

On November 7, 1991, the president of Priority E.M.S., Michael Boatright, and his attorneys, Michael Piper and Louis Koerner, incorporated Federal Recovery Services, Inc. The attorneys control a majority of the corporation's stock under a subscription agreement, although shares were not formally issued. They also served as directors and officers in the corporation.

On November 12, 1991, FRS filed a sealed complaint attempting to state a claim in the name of the United States of America against Crescent City E.M.S., Inc., Blue Cross & Blue Shield of

2

Arkansas, and other individual defendants. The complaint alleged that, beginning in January 1989, Crescent City submitted claims seeking reimbursement for the transportation of dialysis patients who were ineligible under Medicare and Medicaid regulations for ambulance services. In particular, FRS alleged that Medic One provided ambulance transportation for Urban Chastant and 13 other individuals, even though their medical conditions did not require such service.

On March 1, 1993, the United States filed a notice of its partial election to intervene in the action pursuant to 31 U.S.C. § 3730(b)(4).[1] The following day, the district court ordered the complaint unsealed and served upon Crescent City, Blue Cross, and the individual defendants. In addition, the district court's order provided that "the United States shall have 30 days from the date of this order in which to file an amended complaint." Despite this order, on March 3, 1993, over two-and-one-half years after filing the complaint, FRS filed its First Amended Complaint naming Michael Boatright as an additional relator and alleging additional instances of fraudulent conduct by Crescent City. This amended complaint purported to invoke Rule 15(a) of the Federal Rules of Civil Procedure.

---

[1] The United States elected to intervene in that portion of the suit against Crescent City and the individual defendants but declined to intervene against Blue Cross & Blue Shield of Arkansas. Although the United States' intervention vested it with control of the litigation against Crescent City, FRS retained the authority to proceed against Blue Cross on its own. 31 U.S.C. § 3730(b)(4)(B).

On June 2, 1993, Crescent City moved to dismiss FRS for lack of subject matter jurisdiction. Crescent City argued that FRS was not entitled to bring this action because the facts underlying the complaint had been previously disclosed in the prior Louisiana state court litigation and that FRS was not the original source of that information. In addition, Crescent City argued that Michael Boatright was improperly joined as a party plaintiff.

Attempting to cure the jurisdictional defect identified by Crescent City, on August 3, 1993, FRS and Boatright filed a motion to substitute Boatright for FRS as the relator. On August 12, 1993, the district court granted Crescent City's motion to dismiss FRS for lack of subject matter jurisdiction. The court, construing FRS's first amended complaint filed on March 3, 1993 as a motion for leave to amend its complaint, rejected FRS's attempt to add Boatright as an additional relator. On August 30, 1993, the district court confirmed its August 12th ruling and issued its memorandum explaining the ruling.

With FRS and Boatright out of the picture, the United States proceeded with the litigation against Crescent City and prepared the case for trial. Before trial, the United States and Crescent City reached a settlement in which Crescent City agreed to pay over $1.8 million, and, on August 2, 1994, both joined in filing a stipulation of dismissal pursuant to Rule 41(a)(1)(ii). That same day, almost a year after they had been dismissed from the case, FRS and Boatright filed a motion for reconsideration of the district court's August 30, 1993 ruling. In addition, FRS filed a motion to

4

strike the stipulation of dismissal. Prompted by FRS's actions, the United States filed a motion to dismiss the suit pursuant to Rule 41(a)(2) on September 9, 1994.

While the motion for reconsideration was pending, on August 30, 1994, FRS's attorneys, Louis Koerner and Michael Piper, both filed motions for award of attorneys' fees summing to $190,000. On September 21, 1994, the district court denied FRS's motion for reconsideration, holding that "[n]o argument or authority cited in support of FRS's Motion for Reconsideration . . . has given this Court cause or pause to question its prior ruling." Moreover, the court noted that FRS's and Boatright's attempt to reenter the litigation at this stage in the litigation--on the eve of the settlement of suit--were particularly unwelcome.

Turning to the motion for attorneys' fees, the district court ruled that FRS's attorneys were not entitled to fees because FRS was not a proper party to the litigation. In addition, the court noted that there had been no finding that Crescent City violated the False Claims Act. Accordingly, the district court entered its judgment on September 23, 1994, dismissing the claims against Crescent City and the individual defendants.[2]

FRS, Boatright, and FRS's attorneys timely appealed to this court, contesting the propriety of the district court's orders

---

[2]    On April 23, 1993, Blue Cross had filed a motion to dismiss FRS's claim for lack of subject matter jurisdiction. The district court had granted this motion on August 13, 1993, and the final judgment dismissed the claims against Blue Cross. FRS and Boatright did not appeal from that portion of the judgment dismissing the claims against Blue Cross.

dismissing FRS, denying FRS leave to add Boatright as an additional relator, and denying attorneys' fees for FRS's attorneys, Koerner and Piper.

After oral argument, the United States negotiated a settlement agreement with FRS, Boatright, and the two attorneys. Pursuant to the settlement agreement, the United States agreed to pay Boatright $186,250, 10% of the proceeds of its recovery from Crescent City. The agreement contemplated that Boatright, Koerner, and Piper would share in the proceeds of this settlement. In return, FRS, Boatright, and the attorneys released their claims against the United States. The agreement expressly provided, however, that it did not affect the right of FRS and its attorneys to pursue this appeal for the purposes of challenging the district court's denial of an award of attorneys' fees and expenses against Crescent City.

## II.

31 U.S.C. § 3730(d)(1) provides that qui tam relators shall receive, in addition to any share of the proceeds of the litigation or settlement of the underlying qui tam action, "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs," such expenses, fees, and costs to be awarded "against the defendant." Only those parties that are properly a part of the qui tam action are statutorily entitled to the award of attorneys' fees and expenses. United States ex rel. Taxpayers Against Fraud v. General Electric Co., 41 F.3d 1032, 1044 (6th Cir. 1994) (noting that

6

attorneys for qui tam relator who has no standing are not entitled to attorneys' fees).  Thus, Koerner's and Piper's statutory entitlement to attorneys' fees depends in the first instance upon their client's status as a party in the case.  We hold that FRS was not a proper party to this litigation and that therefore FRS's attorneys, Koerner and Piper, are not entitled to attorneys' fees and expenses.

A.

31 U.S.C. § 3730(e)(4)(A) limits the subject matter jurisdiction of courts adjudicating qui tam actions under the False Claims Act.  It provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, of from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

Following the statutory framework, we ask 1) whether there has been a "public disclosure" of allegations or transactions, 2) whether the qui tam action is "based upon" such publicly disclosed allegations, and 3) if so, whether the relator is the "original source" of the information.  Cooper v. Blue Cross & Blue Shield of Florida, Inc., 19 F.3d 562, 565 n.4 (11th Cir. 1994).

The filings in the Louisiana state court suits brought by Priority E.M.S. were "public disclosures" within the meaning of the statute.  "[A]ny information disclosed through civil litigation and on file with the clerk's office should be considered a public

7

disclosure of allegations in a civil hearing for purposes of section 3730(e)(4)(A)."  United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1350 (4th Cir.), cert. denied, 115 S.Ct. 316 (1994).  This includes civil complaints.  Id. at 1350-51.

In October 1990, more than a year prior to the filing of this qui tam action, Priority E.M.S. filed two different complaints against Crescent City in Louisiana state court, both alleging that Crescent City submitted fraudulent claims for reimbursement for ambulance services provided to individuals who were not medically eligible for those services.  See Priority E.M.S., Inc. v. Crescent City E.M.S. d/b/a Medic One and Medic One Inc., No. 90-19542 (La. Civ. Dist. Ct.), remedial writ denied, 607 So.2d 559 (La. 1992), cert. denied, 646 So.2d 380 (La. 1994); Priority E.M.S., Inc. v. Crescent City E.M.S., Inc. d/b/a Medic One, Inc. and Medic One, No. 64-668 (Jud. Dist. Ct.), remedial writ denied, 600 So.2d 660 (La. 1992).  These complaints were a matter of public record and, as such, constitute public disclosures.

FRS's qui tam action is "based on" these public disclosures. Wang v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992).  FRS has conceded as much, noting in its Motion to Partially Lift Seal filed on August 10, 1992 that "[t]he claim of Priority E.M.S., Inc. against Crescent City E.M.S. for unfair trade practices is based upon the same factual matters as the claim against Crescent City E.M.S., Inc. in this proceeding."  FRS now contends that its qui tam action is not based on the prior Louisiana state court litigation because only one instance of fraud--that involving Urban

8

Chastant--is common to both the state and federal litigation. FRS presses that its investigation unearthed additional instances of fraudulent conduct by Crescent City that were not a part of the earlier, state court litigation. We are not persuaded.

"[A]n FCA qui tam action even partly based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transaction." United States ex rel. Precision Co. v. Koch Industries, Inc., 971 F.2d 548, 552 (10th Cir. 1992) (Koch I), cert. denied, 113 S.Ct. 1364 (1993); see also Cooper, 19 F.3d at 567 (holding that 31 U.S.C. § 3730(e)(4) "preclude[s] suits based in any part on publically disclosed information"). As the Tenth Circuit acknowledged, Congress chose not to insert the adverb "solely" before "based upon," yet to hold as FRS urges would accomplish exactly that result and alter the statute's plain meaning. Koch I, 971 F.2d at 552. Stated another way, FRS cannot avoid the jurisdictional bar simply by adding other claims that are substantively identical to those previously disclosed in the state court litigation.

                              B.

Nor does FRS qualify as an "original source" immune to the jurisdictional bar of 31 U.S.C. § 3730(e). The False Claims Act defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

9

In Koch I, the Tenth Circuit rejected a virtually identical claim. There, Precision Company filed a qui tam action against Koch Industries, Inc., alleging that Koch had been understating the amount of crude oil and natural gas it had produced from federal lands. Precision had obtained the information regarding Koch's conduct from Precision's majority shareholder, William Koch, and its president, William Presley. Nevertheless, the Koch I court held that Precision was not the original source of the information that Koch and Presley had collected prior to Precision's incorporation. 971 F.2d at 554 (noting that "Precision is the qui tam plaintiff in the present action, not William Koch or William Presley").

There is no suggestion that this litigation is based upon information collected by FRS. To the contrary, like Precision, FRS was not incorporated until well after Priority E.M.S. had investigated Crescent City's conduct and filed the state court suits against Crescent City. See id. (finding that Precision did not come into existence as corporate entity until well after related state court litigation had been commenced). Indeed, FRS was incorporated only days before this qui tam action was filed.

FRS responds that, even if it is not the original source of the information collected prior to its incorporation, it is the original source of that information obtained after its incorporation. FRS presses that it undertook a substantial amount of investigative work, work that disclosed additional fraudulent

10

conduct by Crescent City and that significantly enhanced the value of the litigation to the United States.

The Tenth Circuit in Koch I rejected an identical argument, holding that Precision was not the original source of the information that Koch and Presley obtained after Precision's incorporation. The court concluded that "this information is best characterized as a continuation of, or derived from Mr. Presley's and Mr. Koch's individual investigations." 971 F.2d at 554. Comparing the information obtained by Koch and Presley prior to Precision's incorporation with that obtained after its incorporation, the court noted that the latter information was "weak, informal and strikingly redundant." Id.

FRS's status in this litigation differs from Precision's status in Koch I in no meaningful way. FRS never demonstrates that the work that it performed unearthed qualitatively different information than what had already been discovered. Rather, as FRS concedes, FRS participated in this litigation solely as the nominal plaintiff-relator. Indeed, FRS was incorporated with the express purpose of pursuing qui tam litigation based on the information that others, either Priority E.M.S. or Boatright, had already obtained. Any information collected after FRS's incorporation was the product and outgrowth of the information that others had obtained prior to FRS's incorporation. In short, FRS had no

11

"direct and independent" knowledge of the information upon which this qui tam action is based.[3]

Finally, FRS attempts to end-run the "original source" inquiry by arguing that the United States' intervention in the action cured any jurisdictional defect. According to this reading of 31 U.S.C. § 3730(e)(4), that section bars qui tam actions based on publicly disclosed information unless the plaintiff is the original source or unless the United States intervenes.

The United States may properly intervene in a suit by a putative source regardless of jurisdictional failures in the underlying suit. United States v. Pittman, 151 F.2d 851 (5th Cir. 1945), cert. denied, 328 U.S. 843 (1946). Such intervention does not, however, confer subject matter jurisdiction over the relator's claims. Such a reading of the jurisdictional bar of 31 U.S.C. § 3730(e)(4) ignores the False Claims Act's goal of preventing parasitic suits based on information discovered by others. Indeed, under FRS's interpretation, the United States' intervention would cure the jurisdictional defects in all suits, even those brought by individuals who discovered the defendant's fraud by reading about it in the morning paper. The legislative history and policy behind the Act refute such a reading.

---

[3]     Nor did FRS demonstrate that it "has voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B). Although not impossible, it is highly unlikely that FRS contacted the government during the 5-day time span between FRS's incorporation and the filing of this suit.

Nor does our interpretation of 31 U.S.C. § 3730(e)(4) render ineffective that portion of 31 U.S.C. § 3130(d)(1) that provides for the award to the relator of up to 10% of the proceeds of the action where the action was "based primarily on disclosures of specific information." The legislative history discloses that Congress included that provision to provide for "the case where the information has already been disclosed and the person qualifies as an 'original source' but where the essential elements of the case were provided to the government or news media by someone other than the qui tam plaintiff." 132 Cong. Rec. H9389 (statement of Rep. Berman); see also 132 Cong. Rec. S11244 (statement of Sen. Grassley). We hold that 31 U.S.C. § 3730(e)(4) bars FRS from pursuing this qui tam litigation.

## III.

FRS also argues that, even if it cannot pursue this litigation, Michael Boatright can. In this vein, FRS contends that the district court erred in denying its attempt to amend its complaint to name Boatright as an additional relator and in denying FRS's attempt to substitute Boatright as the relator. We disagree.

31 U.S.C. 3730(e)(4) denies subject matter jurisdiction over the qui tam complaint filed by FRS. Under precedent controlling the panel, neither Rule 15 nor any other rule of civil procedure permit FRS to cure this jurisdictional defect by including or substituting Boatright. In Aetna Casualty & Surety Co. v. Hillman, 796 F.2d 770, 774 (5th Cir. 1986), we held that Rule 15 does not

13

permit a plaintiff from amending its complaint to substitute a new plaintiff in order to cure the lack of subject matter jurisdiction. See also Summit Office Park, Inc. v. United States Steel Corp., 639 F.2d 1278, 1282 (5th Cir. Unit A Mar. 1981) (holding that "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs"). We see no difference between FRS's attempt to remedy the lack of subject matter jurisdiction in this case from that rejected in Hillman.

We recognize that the Tenth Circuit in United States ex. rel. Precision Co. v. Koch Industries, Inc., 31 F.3d 1015, 1019 (10th Cir. 1994) (Koch II), held that a qui tam relator over whom the district court does not have subject matter jurisdiction may amend its complaint to include a proper relator. The Tenth Circuit dismissed the analysis of Judge Ainsworth in Summit Office Park as a "technical position" that was "subject to the equally technical response that at the time the amended complaint was filed no determination of standing had been made." Id.

We do not take such a sanguine view of the federal courts' limited subject matter jurisdiction. That FRS sought to include Boatright as a relator prior to the district court dismissing it from this suit is of no moment. In Hillman, we rejected Aetna's attempt to substitute USF&G as plaintiff, even though Aetna filed its amended complaint prior to the district court's determination that there was no subject matter jurisdiction over Aetna's claims. In short, regardless of when the district court actually determines

14

it lacks subject matter jurisdiction over the original plaintiff, "Rule 15 . . . do[es] not allow a party to amend to create jurisdiction where none actually existed." Hillman, 796 F.2d at 776.

Koerner and Piper created FRS only days before filing this suit. Its sole, corporate purpose was to prosecute this suit. Koerner and Piper controlled the corporation. Michael Boatright, the alleged original source of the information underlying this suit, held less than half of its shares. Koerner and Piper contend that they created FRS to protect Boatright's safety, but that contention is belied both by the attorneys' control over FRS and by the fact that the state court litigation had already disclosed Boatright's identity. FRS's origins and capital structure suggest that the attorneys created FRS to control the proceeds of this litigation. The attorneys by-passed a suit by Boatright, their client, in favor of an entity they controlled. It was only a year later, when confronted by the reality that the district court had no jurisdiction over the claims of FRS and after the government had intervened under the statute, that Koerner and Piper attempted to sue on behalf of their client. Neither the record before us nor the oral argument of counsel offer any other credible explanation.

We are sensitive to the reality that Congress allows cupidity of counsel and client to effectuate congressional goals. Most private attorneys-general litigation does so as well. That said, even here there are limits. Under the statutory scheme before us, there is a right to reasonable attorneys' fees, but the statute did

15

not dispense with the tradition that a lawyer must represent his client's interest, not his own. The attorneys' effort to control Boatright by creating FRS overreached, and the resulting loss of counsel fees is its price. This is not a gratuitous observation. Rather, it is to explain that while the law of standing in this circuit dictates the result in this case, it works no "technical" or unfair result.

## IV.

Neither FRS nor Boatright were proper parties to this qui tam litigation. Their attorneys, Koerner and Piper, are not statutorily entitled to attorneys' fees and expenses. We AFFIRM the judgment of the district court.