United States Court of Appeals
Fifth Circuit

**F I L E D**

June 24, 2003

Charles R. Fulbruge III
Clerk

REVISED AUGUST 18, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-40504

_____

UNITED STATES OF AMERICA, ex rel, PATRICIA LAIRD; ET AL

Plaintiffs

UNITED STATES OF AMERICA, ex rel, JAMES MAYFIELD

Plaintiff - Appellant

v.

LOCKHEED MARTIN ENGINEERING AND SCIENCE SERVICES CO

Defendant - Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before KING, Chief Judge, and REAVLEY and STEWART, Circuit Judges.

KING, Chief Judge:

James Mayfield brought a <u>qui tam</u> action under the False Claims Act, 31 U.S.C. § 3729 (2000). On a motion for summary judgment, the district court concluded that (1) Mayfield was barred by the doctrine of <u>res judicata</u> from bringing the majority of his claims against Lockheed, and (2) the court lacked subject matter

1

jurisdiction pursuant to the "public disclosure" provisions of the False Claims Act to consider the rest of Mayfield's claims against Lockheed.

In determining that Mayfield did not qualify as an "original source" of the information publicly disclosed in his prior state court lawsuit, the district court aligned itself with a minority of the circuits interpreting the original source exception.  As a matter of first impression for this court, we choose instead to follow the majority interpretation.  We thus vacate the judgment of the district court and remand for findings under this test.  We further hold that Mayfield's prior state court lawsuit did not bar him from bringing the present claims under the False Claims Act.

## I.

### STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

From November 1989 until his termination in March 1995, James Mayfield was employed with Lockheed Martin Engineering & Sciences Company ("Lockheed").  From January 1994 until this termination, Mayfield worked with Lockheed as its project specialist and was responsible for, among other things, overseeing the contents, preparation, execution and delivery of National Aeronautics and Space Administration ("NASA") Form 533 reports.

Pursuant to the Engineering, Test and Analysis Contract ("ETA Contract") between Lockheed and NASA, Lockheed was required to file one version of the NASA Form 533 report – the 533M report – with

2

NASA on a monthly basis and another version – the 533Q report – with NASA on a quarterly basis. Essentially, the NASA Form 533 reports provided a basis for reporting and evaluating Lockheed's costs and expenses under the ETA Contract. The ETA Contract explicitly provided that payment of fees to Lockheed under the contract was contingent upon compliance with contractual provisions controlling Lockheed's reporting of accurate cost overruns and cost at completion figures.

## A. The State Court Action

On February 17, 1995, Mayfield filed a wrongful discharge suit in state court, alleging that Lockheed wrongfully terminated his employment in retaliation for internally inquiring into whether an act he was required to perform was illegal.

As alleged in Mayfield's first amended petition, in December 1994, Mayfield became aware (through his supervisor, Ben Carroll) that Lockheed was knowingly failing to report excessive costs and anticipated cost overruns under the ETA Contract as required by the compliance provisions of the contract. After Carroll told Mayfield that the budgets being used to complete the NASA Form 533 reports for NASA understated the future costs of operations, Mayfield began to inquire into the legality of this conduct. Mayfield involved more of his supervisors and management level employees in the matter, but, as alleged, soon became "the victim of blatant retaliation."

3

In August 1996, the state district court granted summary judgment in favor of Lockheed. Final judgment against Mayfield was subsequently affirmed by the state court of appeals. See Mayfield v. Lockheed Eng'g & Scis. Co., 970 S.W.2d 185, 187-88 (Tex. App. – Houston [14th Dist.] 1998, pet. denied) ("Mayfield I").

B.    The Federal Action

On April 24, 2000, Mayfield filed a second suit against Lockheed in federal court pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA").[1]

Mayfield alleged in his first amended complaint that Lockheed knowingly failed to report excessive costs and anticipated cost overruns as required by the compliance provisions of the ETA Contract and, indeed, knew that it could not perform in accordance with the costs specified in the initial bid to NASA for the ETA Contract but knowingly submitted a false bid for the contract anyway.

On February 13, 2002, the district court granted Lockheed's motion for summary judgment. United States ex rel. Mayfield v. Lockheed Martin Eng'g & Scis. Co., 186 F. Supp. 2d 711, 713 (S.D. Tex. 2002) ("Mayfield II"). It held that the doctrine of res

---

[1]    In accordance with 31 U.S.C. § 3730(b)(2), Mayfield filed his complaint under seal and served a copy on the United States Department of Justice. On February 22, 2001, the Department of Justice notified the district court of its decision to decline to intervene in the case; Mayfield thereafter proceeded as the qui tam relator.

4

judicata precluded litigation of Mayfield's FCA claims to the extent they were based on the conduct complained of in his state court action. Id. at 715. It further held that although Mayfield was not barred by res judicata from relitigating any claims arising out of conduct not complained of in his prior lawsuit, the court lacked subject matter jurisdiction over these claims because Mayfield was not the "original source" with respect to any allegedly wrongful conduct occurring after the filing of his prior lawsuit.

Mayfield timely filed a notice of appeal, requesting review of both aspects of this final judgment.

## II.

### STANDARD OF REVIEW

By its terms, the "public disclosure" bar is jurisdictional. Other circuit courts have specifically held that "[i]n a qui tam suit brought under the FCA, the jurisdictional issue of 'public disclosure' clearly arises out of the same statute that creates the cause of action . . . Thus, a challenge under the FCA jurisdictional bar is necessarily intertwined with the merits" and should be resolved pursuant to either Federal Rule of Civil Procedure 12(b)(6) or 56. See, e.g., United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1518 (10th Cir. 1996). While our court has not addressed this specific jurisdictional point, we have previously stated that "[t]he

questions of subject matter jurisdiction and the merits will normally be considered intertwined where the statute provides both the basis of federal court subject matter jurisdiction and the cause of action." Clark v. Tarrant Cty., 798 F.2d 736, 742 (5th Cir. 1986); see also Eubanks v. McCotter, 802 F.2d 790, 792-93 (5th Cir. 1986) ("When the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action, the court should assume jurisdiction over the case and decide the case on the merits."). We see this case as presenting one such instance where questions of subject matter jurisdiction and the merits are intertwined because "the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action." Williamson v. Tucker, 645 F.2d 404, 415-16 (5th Cir. 1981) (citing Bell v. Hood, 327 U.S. 678 (1946)). The proper course of action for the district court was thus "to find that jurisdiction exist[ed] and deal with the merits of the case." Id. at 415.

The district court basically followed this procedure here. It styled Lockheed's challenge to the court's subject matter jurisdiction as a summary judgment motion and, presumably, utilized this standard. However, instead of first considering the "public disclosure" bar question (which goes to the subject matter jurisdiction of the court), it first considered Lockheed's affirmative defense of res judicata. We believe the jurisdictional

6

bar should have been considered by the district court before it moved to the merits of Lockheed's affirmative defense. <u>United States ex rel. Fed. Recovery Servs., Inc. v. Crescent City E.M.S.</u>, 72 F.3d 447, 448 (5th Cir. 1995) ("We are persuaded that . . . the district court never had jurisdiction over [the action.]"); <u>United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.</u>, 276 F.3d 1032, 1040 (8th Cir. 2002) (stating, in a <u>qui tam</u> case where information was allegedly publicly disclosed, that "[a]t the threshold, we must decide whether we have subject-matter jurisdiction over this case"). We therefore begin our review by addressing the FCA's "public disclosure" bar, found at 31 U.S.C. § 3730(b)(4), and review the district court's grant of summary judgment under a <u>de novo</u> standard of review, using the same standard utilized by the district court. <u>See</u> <u>Kerr v. Lyford</u>, 17 F.3d 330, 336 (5th Cir. 1999) (holding that, under a Rule 56 standard, the record must be viewed in the light most favorable to the non-movant).

## III.

### ANALYSIS OF THE PUBLIC DISCLOSURE BAR

#### A.  Presentation of the Disputed Issue – Whether Mayfield is the "Original Source" of Information

As we have discussed the procedure and the historical underpinnings of the <u>qui tam</u> provisions of the FCA in prior opinions, we need not repeat them here. <u>See</u> <u>Riley v. St. Luke's Episcopal Hosp.</u>, 252 F.3d 749, 752-53 (5th Cir. 2001) (en banc);

7

<u>Searcy v. Philips Elec. N. Am. Corp.</u>, 117 F.3d 154, 160 (5th Cir. 1997). Suffice it to say that in certain circumstances, suits by private parties on behalf of the United States against anyone submitting a false claim to the government are permitted. <u>Hughes Aircraft Co. v. United States ex rel. Schumer</u>, 520 U.S. 939, 941 (1997).

The FCA, the 1863 Civil War statute under which these suits are permitted, has been amended only twice, once in 1943 and, more recently, in 1986 by the Grassley Amendments. <u>Id.</u> In 1943, interpreting the <u>qui tam</u> provisions as then written, the Supreme Court stated that a private plaintiff might bring a <u>qui tam</u> action even though his knowledge of fraud was gained second-hand from a government criminal indictment. See <u>United States ex rel. Marcus v. Hess</u>, 317 U.S. 537 (1943). In response, Congress amended the FCA to bar a court's jurisdiction over <u>qui tam</u> suits that were "based on evidence or information the Government had when the action was brought." 31 U.S.C. § 3730(b)(4) (1982 ed.) (superceded). However, this amendment led to unintended results as it deprived potential relators who had themselves given valuable information to the government <u>before</u> filing their <u>qui tam</u> action of an ability to sue under the FCA. See, e.g., <u>United States ex rel. Wisconsin v. Dean</u>, 729 F.2d 1100, 1106 (7th Cir. 1984) (holding that the district court had no jurisdiction over a <u>qui tam</u> action brought by Wisconsin based on information of Medicaid fraud the

8

state had uncovered because the state had reported the Medicaid fraud to the federal government before bringing suit).

In response, in 1986, Congress amended the Act (to its current form). Specifically, it repealed the "government knowledge" jurisdictional bar and replaced it with the "public disclosure" bar. See United States ex rel. Rabushka v. Crane Co., 40 F.3d 1509, 1511 (8th Cir. 1994) (discussing the purpose behind the repeal as an accommodation of both of the FCA's goals of promoting private citizen involvement in exposing fraud against the government and preventing parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud).

Under § 3730(e)(4)(A), the jurisdictional provision for qui tam actions under the FCA now provides that:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2000). In the related subsection immediately following this bar, the statute further defines an "original source" as:

> [A]n individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

9

Id. § 3730(e)(4)(B).

In Federal Recovery Services, Inc., we drew from the plain language of § 3730(e)(4) to set forth the three questions to be asked in a § 3730 jurisdictional inquiry as: (1) whether there has been a "public disclosure" of allegations or transactions, (2) whether the qui tam action is "based upon" such publicly disclosed allegations, and (3) if so, whether the relator is the "original source" of the information. Fed. Recovery Servs., Inc., 72 F.3d at 451.

Here, Mayfield does not dispute that Mayfield I served as a "public disclosure" of the information alleged in Mayfield II, nor does he challenge the finding that the allegations in this case are "based upon" the information disclosed in Mayfield I.[2]  Instead,

_____

[2]  Mayfield does generally argue that the jurisdictional bar is inapplicable here because he is the one who made the public disclosure in the first place.  However, Federal Recovery Services discusses the public disclosure bar in the context of a case where the information was disclosed by individuals who filed an initial state court action before filing, as relators, their federal qui tam action in the name of their newly filed corporation.  72 F.3d at 448.  Indeed, United States ex rel. Jones v. Horizon Healthcare Corp., 160 F.3d 326, 330 (6th Cir. 1998), cites to this Fifth Circuit case in rejecting a similar argument from a relator:  "Because the public disclosure and the qui tam action in this case both came from Appellant, she argues that it is improper to consider the qui tam action 'based upon' the prior suit.  Although Appellant's argument has some intuitive appeal, several courts have rejected the contention" because the public disclosure bar is an express statutory bar to the subject matter jurisdiction of the courts to review a case based on information that has been publicly disclosed.  Id. at 333 (citing Federal Recovery Servs., Inc., 72 F.3d at 447).  We find this reasoning persuasive.  To the extent Mayfield thus argues that relators involved in the initial public disclosure of information are not subject to the "public disclosure" bar, we reject the argument.

10

Mayfield contends that as the "original source" of the information, he is saved from the jurisdictional bar. The question before us on appeal thus turns on the statutory construction of the "original source" exception.

**B.    The Parameters of the "Original Source" Exception**

The statutory construction of the "original source" exception is the subject of much disagreement amongst the courts of appeals that have addressed it. The exception explicitly requires the satisfaction of a two-part test: (1) the relator must demonstrate that he or she has "direct and independent knowledge of the information on which the allegations are based" and (2) the relator must demonstrate that he or she has "voluntarily provided the information to the Government before filing" his or her qui tam action. 31 U.S.C. § 3730(e)(4)(B).

Here, the district court found that:

> Mayfield clearly does not have direct knowledge of conduct occurring at Lockheed after he filed his state court action because he was laid off from Lockheed before that suit was filed. As such, Mayfield is not an "original source" with respect to any wrongful conduct occurring after the filing of his prior lawsuit.

Mayfield II, 186 F.Supp.2d at 715-16. As developed more fully below, we do not read the "original source" exception to the jurisdictional bar to require that a relator have "direct" and "independent" knowledge of each false claim alleged in his

11

complaint to have been submitted by the defendant.[3]

A full understanding of the distinct definitions of "direct" knowledge and "independent" knowledge in the "original source" definition requires an analysis of the entire phrase "direct and independent knowledge of the information on which the allegations are based."  The courts of appeals are currently split regarding whether the phrase "the information on which the allegations are based" refers to information on which the allegations in the qui tam relator's complaint are based or information on which the allegations in the public disclosure are based.  The Fourth, Sixth, Eighth and D.C. Circuits have read "information" in subsection (B) of the "original source" definition in tandem with the term "information" in subsection (A) of the "public disclosure" bar immediately preceding the "original source" definition.  This reading logically leads them to conclude that "information" in subsection (B) refers to the information on which the publicly disclosed allegations are based rather than the information contained in the relator's qui tam complaint.  See Minn. Ass'n of Nurse Anesthetists, 276 F.3d at 1048 ("We have interpreted 'independent knowledge' to mean knowledge not derived from the public disclosure.  The independent knowledge requirement clearly

---

[3]     Our interpretation of the jurisdictional bar does not release the relator from the requirement that he plead all false claim allegations in his qui tam complaint with particularity as interpreted by our case law.  See, e.g., United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th Cir. 1999) (discussing the particular pleading required under the FCA).  Whether Mayfield has pled his qui tam fraud allegations with particularity is not the question before us on appeal.

12

serves the congressional goal of barring parasitic actions, but it is worth noting that it does not bar actions based on old news, in which the relator independently discovers information already known to the public.") (internal citations omitted); <u>United States ex rel. Grayson v. Advanced Mgmt. Tech. Inc.</u>, 221 F.3d 580, 583 (4th Cir. 2000) (stating that the relators were not original sources of information underlying the <u>publicly disclosed allegations</u>, not the allegations in the <u>qui tam</u> complaint); <u>United States ex rel. Findley v. FPC-Boron Employees' Club</u>, 105 F.3d 675, 690 (D.C. Cir. 1997) ("[T]he allegations referred to in subparagraph (B) can only mean those allegations publicly disclosed, since those are the only allegations mentioned at all in section 3730(e)(4). Thus, an 'original source' is a relator with direct and independent knowledge of 'the information' [i.e., any essential element of the fraud transaction] on which the [publicly disclosed] allegations are based.") (internal citations omitted); <u>United States ex rel. McKenzie v. Bellsouth Tele., Inc.</u>, 123 F.3d 935, 943 (6th Cir. 1997) ("To qualify as an original source, the relator must have direct and independent knowledge of the information on which the publicly disclosed allegations are based.").

In contrast, the Third, Ninth and Tenth Circuits have construed "the information" in the phrase "the information on which the allegations are based" to refer to the information contained in the <u>qui tam</u> complaint filed by the relator rather than the information contained in the public disclosure. <u>See</u> <u>United States ex rel. Hafter v. Spectrum Emergency Care, Inc.</u>, 190 F.3d 1156,

13

1162 (10th Cir. 1999) ("To establish original source status knowledge, a qui tam plaintiff must allege specific facts – as opposed to mere conclusions – showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof.") (emphasis added); United States ex rel. Mistick v. Housing Auth. of the City of Pitts., 186 F.3d 376, 388–89 (3d. Cir. 1999) (finding that the relator was not the "original source" because he did not have "direct and independent knowledge" of the most critical element of his claims in the qui tam complaint); United States ex rel. Barajas v. Northrop Corp., 5 F.3d 407 (9th Cir. 1993) (holding that an employee of a government subcontractor had "direct and independent knowledge" of the allegations contained in his qui tam complaint).

Based on the district court's holding that it lacked jurisdiction because Mayfield did not have "direct and independent knowledge" of each separate NASA Form 533 submission claimed to constitute a false claim in the Mayfield II complaint, the district court apparently assumed the "direct and independent knowledge" requirement was tied to the "information" contained in the qui tam complaint rather than the "information" contained in the publicly disclosed material. In so assuming, it, without citation, followed the holdings of the Third, Ninth and Tenth Circuits. We disagree with this interpretation of § 3730(e)(4)(B).

Looking at the "public disclosure" bar under (e)(4)(A) and the "original source" definition under (e)(4)(B) together, it makes

14

sense that the first element of the "original source" exception is satisfied if an individual has "direct and independent knowledge" of the "information" on which the allegations in the public disclosure are based. We see no logic in interpreting the word "information" in subparagraph (A) to refer to information publicly disclosed and then interpreting "information" in subparagraph (B) – a subparagraph clearly intended to define a term identified in subparagraph (A) – to refer to each false claim alleged in the relator's qui tam complaint. This construction fails to harmonize the subparagraphs of § 3730(e)(4). See also Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932) (stating that identical words used in different parts of the same statutory section are intended to have the same meaning). As stated by Judge Luttig in United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1352 (4th Cir. 1994):

> [T]he fact that sub-paragraph (B) refers to "the information on which the allegations are based" confirms that the only possible reference of the word "information" in sub-paragraph (B) is to the information publicly disclosed – the exact same reference of the word in sub-paragraph (A).

Id. at 1352 (emphasis added).

As further support that this is the construction intended by Congress, we recognize that those courts which define "information" to refer to allegations contained in the qui tam complaint have difficulty distinguishing between the terms "direct" and "independent" – two discrete and necessary concepts under the "original source" definition. See United States ex rel. Dick v.

15

Long Island Lighting Co., 912 F.2d 13, 16 (2d Cir. 1990) (discussing the significance of the conjunction "and" in "direct and independent" knowledge); see also McKenzie, 123 F.3d at 941 ("In construing the term 'original source' other courts have 'impose[d] a conjunctive requirement – direct and independent – on qui tam plaintiffs.'") (quoting United States ex rel. Springfield Terminal Ry. v. Quinn, 14 F.3d 645, 656 (D.C. Cir. 1994)). For example, in Hafter, the Tenth Circuit defined "direct" knowledge to mean "knowledge gained by the relator's own efforts and not acquired from the labors of others" and "independent" knowledge to mean "knowledge not derivative of the information of others". Hafter, 190 F.3d at 1161. We fail to see a distinction between these terms as so defined.

In contrast, those courts that define "information" to refer to information publicly disclosed do not encounter as much resistance in formulating distinct definitions for the two separate terms "direct" and "independent." See, e.g., Findley, 105 F.3d at 690 ("In order to be 'direct,' the information must be first-hand knowledge. In order to be 'independent,' the information known by the relator cannot depend or rely on public disclosures."); McKenzie, 123 F.3d at 941 ("The word 'direct' is usually interpreted as 'marked by absence of intervening agency,' while 'independent knowledge' is not 'dependent on public disclosure.'") (internal citation omitted); Minn. Ass'n of Nurse Anesthetists, 276 F.3d at 1048-49 (defining "direct" as "unmediated by anything but the plaintiff's own labor" and "independent" as "knowledge not

16

derived from the public disclosure"). The (we think incorrect) construction of "information" as referring to allegations in the qui tam complaint renders the term "independent" meaningless, which we are bound not to do. See INS v. Phinpathya, 464 U.S. 183, 189 (1984); White v. Black, 190 F.3d 366, 368 (5th Cir. 1999). For these reasons, we read the term "information" in subsection (B) of the "original source" definition to refer to the information on which the publicly disclosed allegations are based rather than the information contained in the relator's qui tam complaint.

As Mayfield is responsible for filing the publicly disclosed information in Mayfield I, it is beyond dispute that dismissal on the basis that his knowledge is not "independent" of the public disclosure as that term is defined in § 3730(e)(4)(B) would have been in error. However, we believe that remand is appropriate to allow the district court an opportunity to make factual findings regarding whether Mayfield also satisfies the "direct" knowledge requirement based on the construction of the statute cited above. To aid the district court in this endeavor, prudence dictates some discussion of the "direct" knowledge requirement.

The courts of appeals have used varying formulations to define the term "direct." See, e.g., Minn. Ass'n of Nurse Anesthetists, 276 F.3d at 1048-49 (defining "direct" as "unmediated by anything but the plaintiff's own labor"); Hafter, 190 F.3d at 1161 (defining "direct" as "knowledge gained by the relator's own efforts and not acquired from the labors of others"); United States ex rel. Stinson, Lyons, Gerlin Bustamante, P.A. v. Prudential Ins. Co., 944

17

F.2d 1149, 1160 (3d Cir. 1991) (defining "direct" as "marked by absence of an intervening agency, instrumentality or influence; immediate"); Findley, 105 F.3d at 690 (defining "direct" as "first-hand knowledge" of the information).

We interpret the term "direct" by its plain meaning as knowledge derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others. WEBSTER'S NEW INTERNATIONAL DICTIONARY 640 (3d ed. 1961). In so defining, we note that Congress plainly and intentionally used the phrase "an original source" rather than "the original source" to craft the savings clause. 31 U.S.C. § 3730(e)(4)(B). Thus, for a court in this circuit to have jurisdiction pursuant to this exception, it is not charged with the duty of finding "the" single one true whistleblower. See Stinson, 944 F.2d at 1154, 1161 (discussing the legislative history to the 1986 amendments as demonstrating a congressional intent to encourage qui tam suits brought "by insiders, such as employees who come across information of fraud in the course of their employment") (citing S. Rep. No. 345 at 4, 6, reprinted in 1986 U.S.S.C.A.N. 5269, 5271). Rather, it must look to the factual subtleties of the case before it and attempt to strike a balance between those individuals who, with no details regarding its whereabouts, simply stumble upon a seemingly lucrative nugget and those actually involved in the process of unearthing important information about a false or fraudulent claim. Compare Minn. Ass'n of Nurse Anesthetists, 276 F.3d at 1050 (finding that nurse

18

association had "direct" knowledge that anesthesiologists routinely submitted fraudulent bills to Medicare for anesthesia procedures because the nurses had personal knowledge of the defendants' alleged false claims by virtue of communications with the defendants themselves and had seen the hospital records containing false claims), and United States ex rel. Stone v. Rockwell Int'l Corp., 282 F.3d 787, 802 (10th Cir. 2002) (holding that the relator satisfied the "direct" knowledge requirement even though he no longer worked with the defendant when the faulty pondcrete blocks were manufactured because he learned the facts underlying his claim while looking at the plans for production), and United States ex rel. Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562, 568 (11th Cir. 1994) (holding that a relator's knowledge of an alleged fraud by a Medicare secondary payor was "direct" because it was acquired through "three years of [the relator's] own claims processing, research, and correspondence with members of Congress and [the Health Care Financing Admin.]"), and Wang v. FMC Corp., 975 F.2d 1412, 1417 (9th Cir. 1992) (holding that an engineer-relator who had been called in to study a problem with a product had "direct" knowledge because "he saw [the problem] with his own eyes" and his knowledge was "unmediated by anything but [his] own labor"), with Grayson, 221 F.3d at 583 (finding no jurisdiction to entertain a qui tam action brought by relator attorneys who had represented two unsuccessful bidders in protesting the award of an FAA contract because they "at best verified" their clients' information alleged in the publicly disclosed administrative

19

protest), and United States v. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1021 (9th Cir. 1999) (holding that a member of an electrical workers' union did not meet the "direct" knowledge element since "he never participated in the negotiating, drafting, or implementation" of relevant agreements, "does not allege that he played any role in submitting false claims to the government," and simply heard second-hand (as a member of the union) that the electrical contractors were submitting false claims to the government).

We thus remand for the district court to make factual findings regarding the "direct" knowledge requirement of the first element.

**IV.**

**ANALYSIS OF THE CLAIM PRECLUSIVE EFFECT OF MAYFIELD I ON MAYFIELD II**

In addition to finding that Mayfield did not qualify as an "original source" of information regarding claims submitted by Lockheed after he was terminated, the district court held that the doctrine of res judicata (claim preclusion) barred Mayfield from relitigating any claims arising out of conduct complained of in his prior state court action. As stated, we see it beneficial to remand this case for factual findings regarding the "direct" knowledge requirement. However, in the interest of judicial efficiency, we now address the district court's conclusion regarding Lockheed's affirmative defense.

Assuming without deciding that the district court would find subject matter jurisdiction present on remand, we disagree with the

20

district court's determination that <u>Mayfield I</u> precludes Mayfield from raising his <u>qui tam</u> claims in <u>Mayfield II</u>.

When a federal court is asked to give claim preclusive effect to a state court judgment, the federal court must determine the preclusiveness of that state court judgment according to the principles of claim preclusion of the state from which the judgment was rendered.  <u>See</u> <u>Semtek Int'l Inc. v. Lockheed Martin Corp.</u>, 531 U.S. 497, 508-09 (2001); <u>Jones v. Sheehan, Young & Culp, P.C.</u>, 82 F.3d 1334, 1338 (5th Cir. 1996).  Here, because a Texas state court rendered the judgment in <u>Mayfield I</u>, we must defer to Texas's law on claim preclusion.

### A.    The Doctrine of Claim Preclusion under Texas Law

In Texas, "[r]es judicata or claim preclusion prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." <u>Barr v. Resolution Trust Corp.</u>, 837 S.W.2d 627, 628 (Tex. 1992).  For a judgment to have claim preclusive effect in a later action, the proponent must demonstrate the existence of three elements: (1) there was a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of the parties or those in privity with them exists between the two actions, and (3) the second action is based on the same claims as were raised or could have been raised in the first action.  <u>Amstadt v. United States Brass Corp.</u>, 919 S.W.2d 644, 652 (Tex. 1996).

### B.    Application of the Factors

21

Here, Mayfield does not contest the satisfaction of the first element – that a prior final judgment on the merits by a court of competent jurisdiction was rendered. However, he maintains that the district court erred in holding, in a footnote, that "Mayfield and Lockheed are the only two parties before the Court" and that because the government elected not to intervene, "the United States is <u>not</u> a party to this action." <u>Mayfield II</u>, 186 F. Supp. 2d at 714 n.1 (emphasis in original). He further contends that the district court erred in holding that <u>Mayfield I</u> and <u>Mayfield II</u> are based on the same claims as defined by Texas law.

### *(1) Identity of Parties*

In Texas, the "'identity of parties' [element] requires that both parties to the current litigation be parties to the prior litigation or in privity with parties to the prior litigation." <u>Jones</u>, 82 F.3d at 1341. If a party's interests are represented in a prior action, the identity of parties element is satisfied. <u>Getty Oil Co. v. Ins. Co. of N. Am.</u>, 845 S.W.2d 794, 800 (Tex. 1992). This satisfaction is not defeated by a change in the capacity in which an individual sues, <u>Freeman v. Lester Coggins Trucking, Inc.</u>, 771 F.2d 860, 863 (5th Cir. 1985), nor is it defeated by the inclusion of additional parties to the second suit. <u>Jones</u>, 82 F.3d at 1342-43.

The district court's statement that the United States is <u>not</u> a party in interest before the court is simply incorrect. As we stated in <u>Searcy</u>, "the United States is a real party in interest even if it does not control the False Claims Act suit." <u>Searcy</u>,

22

117 F.3d at 156. Further, in <u>Searcy</u>, as well as in numerous other cases, we detailed the mechanisms present in the <u>qui tam</u> framework that enable the government to retain a tremendous amount of control over a <u>qui tam</u> suit even when it chooses <u>not</u> to intervene. <u>Id.</u>; <u>see also</u> <u>Riley</u>, 252 F.3d at 756 & n.10; <u>Russell</u>, 193 F.3d at 307. To the extent the district court held that "the United States is <u>not</u> a party to this action" such that the "identity of parties" element is even at issue, it thus erred. As recognized by our case law and the clear language of the statute, the suit is brought for the government and on behalf of the government, which will ultimately retain the lion's share of the proceeds and retains the unilateral power to dismiss the case at any time notwithstanding the objections of Mayfield and regardless of its decision not to intervene.

However, it would also be incorrect for us to state that Mayfield is not <u>a</u> party in interest in both actions (<u>Mayfield I</u> and <u>Mayfield II</u>). Where an FCA suit is initiated by a private person, as here, the text of the statute explicitly states that although the suit is "brought in the name of the Government," the action is brought "<u>for the person</u> and for the Government." 31 U.S.C. § 3730(b)(1) (emphasis added); <u>see also</u> <u>Russell</u>, 193 F.3d at 306; <u>United States ex rel. Foulds v. Tex. Tech Univ.</u>, 171 F.3d 279, 289 n.16 (5th Cir. 1999) ("Our own circuit precedent describes the United States as 'a' real party in interest rather than 'the' real party in interest."); <u>see also</u> <u>Vt. Agency of Natural Res. v. United States ex rel. Stevens</u>, 529 U.S. 765, 772-73 (2000) (stating that

23

"[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim" and that "the statute gives the relator himself an interest in the lawsuit, and not merely the right to retain a fee out of the recovery") (emphasis in original); cf. United States ex rel. Gebert v. Transport Admin. Serv., 260 F.3d 909, 918 (8th Cir. 2001) (holding that a bankruptcy settlement agreement and release between putative relators, co-shareholders and a corporation precluded subsequent qui tam claims by the putative relators against the co-shareholder and corporation because the FCA effectuates a partial assignment of an interest that should have been listed as a potential claim in Schedule B).

Mayfield brings this action on behalf of the government at his own expense, 31 U.S.C. § 3730(f), by way of partial assignment that enables him to recover up to 30 percent of the proceeds recovered for the government. Stevens, 529 U.S. at 773. If the FCA claims here are such that Mayfield should have (and ultimately could have) exercised this assigned interest in Mayfield I – the inquiry relevant to the third element of the claim preclusion test discussed below – we find Mayfield's interests were sufficiently represented in Mayfield I to satisfy the "identity of parties" element. This is not to say that another relator would be precluded from bringing this suit on behalf of the United States. It is to say that the identity of parties element as to Mayfield is satisfied.

*(2) The Same Cause of Action*

For Mayfield I to preclude Mayfield from raising claims

24

against Lockheed in <u>Mayfield II</u> under Texas's doctrine of claim preclusion, Lockheed must additionally prove an identity of claims between the two suits. To determine whether the same "claim" is involved in two actions, Texas courts employ the modern transactional test of the Restatement (Second) of Judgments, under which a judgment in an earlier suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same "subject matter" and which might have been litigated in the first suit. <u>Getty Oil</u>, 845 S.W.2d at 798.

The critical issue in determining whether the two actions arise out of the same "subject matter" is whether they are based on the "same nucleus of operative fact." <u>Jones</u>, 82 F.3d at 1342; <u>Getty Oil</u>, 845 S.W.2d at 798. As stated by the Texas Supreme Court in <u>Barr</u>, a transaction or claim is not equivalent to a sequence of events. 837 S.W.2d at 631. Rather, the determination of whether later causes of action are extinguished by an earlier action is to be made pragmatically, giving weight to whether the facts alleged are related in time, space, origin, or motivation, whether the causes of action form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage. <u>Id.</u>; <u>see also</u> <u>Flores v. Edinburg Consol. Indep. Sch. Dist.</u>, 741 F.2d 773, 779 (5th Cir. 1984) ("A different cause of action is not merely a different theory of recovery; it should differ in 'the theories of recovery, the operative facts, and the measure of recovery.'") (citing <u>Dobbs v.</u>

25

<u>Navarro</u>, 506 S.W.2d 671, 673 (Tex. Civ. App. – Houston [1st Dist.] 1974, no writ)).

While there is factual overlap between those facts alleged in <u>Mayfield I</u> and those facts alleged in <u>Mayfield II</u>, we do not think the wrongful termination claim brought by Mayfield in his individual capacity in <u>Mayfield I</u>, and the FCA claims brought by Mayfield in his capacity as a relator on behalf of the United States here would form a convenient trial unit for purposes of claim preclusion under Texas law.  As demonstrated from the Texas court of appeals' opinion in <u>Mayfield I</u>, the subject matter of the state court suit revolved around the central question whether a certain exception to Texas's doctrine of at-will employment should be extended to situations where an employee is allegedly terminated for inquiring into whether an act he is required to perform is illegal and, if so, whether Mayfield was terminated for so inquiring.  <u>Mayfield I</u>, 970 S.W.2d at 187.  The terms of the ETA Contract between Lockheed and NASA and the facts related to the origin and formation of this contract would have been of little value to this inquiry; indeed, the contract itself is not even mentioned in the <u>Mayfield I</u> opinion.  Nor would evidence regarding the intent of Mayfield to defraud the government have been helpful to Mayfield's state tort claims.  In contrast, the centerpiece evidence in <u>Mayfield II</u> involves the terms of the ETA Contract and evidence enlightening whether Lockheed intended falsely or fraudulently to submit the initial bid for the ETA contract and later falsely or fraudulently to submit NASA Form 533 reports in

26

violation of the terms of this contract.

Further, as between Mayfield I and Mayfield II, the remedies sought and the measure of recovery for Mayfield are completely different. In Mayfield I, Mayfield sought general damages and lost wages, as well as mental anguish and exemplary damages, all in his personal capacity. In Mayfield II, Mayfield, as relator, sought set statutory penalties under the FCA and pre- and post-judgment interest. Evidence related to Mayfield's job performance record, qualifications, future earning capacity and personal damages have absolutely nothing to do with proof necessary for the FCA claims alleged in Mayfield II or for the damages sought. Moreover, as stated, in qui tam actions, the largest portion of any recovery (at least 70%) goes to the government, not Mayfield. Finally, Mayfield's motivation in bringing his wrongful discharge suit in Mayfield I is different from his motivation for bringing a qui tam suit in Mayfield II. In Mayfield I, he wished to be compensated or made whole following what he saw as a wrongful discharge that was personal. In contrast, in this case, Mayfield sues to recover from Lockheed on behalf of the government and in the name of the government for alleged fraud on the government through Lockheed's false submissions to NASA.

In sum, while the factual underpinnings of each suit are certainly related, we do not see convenience in trying the two cases together, especially given the procedural requirements related to filing a qui tam case under seal in order to give the government an opportunity to intervene, 31 U.S.C. § 3730(b)(1), and

27

the likely continued involvement of the government in the qui tam suit. See id. § 3730(b)(4)(B). This case and the relation it has to Mayfield's state law claim for wrongful discharge in an at-will employment state cannot easily be compared to those cases (cited by Lockheed in support of its assertion that Mayfield I and Mayfield II arise from the same subject matter) that involve relators asserting both qui tam and retaliation claims under the retaliation provisions of the FCA. See, e.g., Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1240-41 (11th Cir. 1999); Hindo v. Univ. of Health Scis., 65 F.3d 608, 614-15 (7th Cir. 1995).[4] In contrast to these cases, the FCA claims and the state tort claim cannot be naturally grouped. Therefore, on remand, assuming the district court finds that Mayfield satisfies the "direct" knowledge requirement, we further hold that Mayfield's qui tam claims are not extinguished by the doctrine of claim preclusion.

## CONCLUSION

We VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

---

[4] A close read of the Hindo opinion reveals support for Mayfield rather than Lockheed. There, the plaintiff medical professor first brought an unsuccessful state court suit for state retaliatory discharge against the defendant university. Hindo, 65 F.3d at 610. Later, he brought qui tam claims pursuant to the FCA (31 U.S.C. § 3729(a)) against the defendant university for fraudulently seeking reimbursement for salaries of radiology residents and, simultaneously, brought a retaliation claim also pursuant to the FCA (31 U.S.C. § 3730(h)) for threatening to terminate his tenure in retaliation for reporting the alleged fraud. Id. The Seventh Circuit dismissed only the retaliation claim as barred by the earlier state court suit. Id. at 614.

28