IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 9, 2008

Charles R. Fulbruge III
Clerk

No. 07-50732

United States of America, ex rel, JOSEPH FRIED; PUBLIC PROGRAM
TESTING ORGANIZATION,

Plaintiffs - Appellants

v.

WEST INDEPENDENT SCHOOL DISTRICT

Defendant - Appellee

---

Appeal from the United States District Court
for the Western District of Texas

---

Before DAVIS and SOUTHWICK, Circuit Judges, and DRELL, District Judge.[*]

SOUTHWICK, Circuit Judge:

Relators Joseph Fried and Public Program Testing Organization challenge the district court's dismissal of their qui tam action brought on behalf of the United States under the False Claims Act. We affirm.

FACTS

Joseph Fried, an Ohio resident and director of Public Program Testing Organization, identifies himself as a government-waste opponent. He is particularly concerned about fraud and waste in the Social Security System.

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

Fried filed this False Claims Act qui tam suit against West Independent School District ("West ISD") alleging that it had defrauded the Social Security Administration by representing that certain employees were entitled to Social Security benefits when in fact they were not.[1]

The sine qua non of this litigation is a quirky provision in Social Security regulations. According to the relator, for state and local government employees to be covered by Social Security, they must not be covered by some other retirement plan. In addition, they must qualify under the agreement entered between the relevant State and the Social Security Administration which establishes the details of how that State's public employees will become eligible for benefits. The agreements, named for the section of the Social Security Act that authorizes them, are called Section 218 Agreements. Texas teachers have a separate retirement system and accordingly would not appear eligible for Social Security. However, a number of school districts in Texas, including West ISD, allowed certain retiring teachers to work their last day in a non-teacher position that was covered by Social Security. By that one day of work, the teachers became entitled to benefits they would not otherwise receive. The participants would pay a processing fee to the participating school district, and work their last day of employment in a janitorial or clerical position.

Fried alleges that these teachers were not properly classified as full-time employees, did not perform bona fide employment, and therefore were not

---

[1] Fried has brought these same claims against a number of other school districts in Texas. Two of these cases have been stayed pending the decision in this case. United States ex rel. Fried v. Lindale Indep. Sch. Dist., No. 6:05-CV-440 (E.D. Tex. filed Nov. 21, 2005); and United States ex rel. Fried v. Hidalgo ISD, et al., No. 3:06-CV-00777 (S.D. Tex. filed Dec. 11, 2006). One case was dismissed on the same basis as the district court here. United States ex rel. Fried, et al. v. Hudson Indep. Sch. Dist., No. 9:05-CV-00245 (E.D. Tex. filed Dec. 21, 2005). Two other cases were voluntarily dismissed. United States ex rel. Fried, et al. v. Fort Davis Indep. Sch. Dist., et al., No. 5:06-CV-01078 (W.D. Tex. filed Dec. 11, 2006); United States ex rel. Fried v. Yoakum Indep. Sch. Dist., No. 6:05-CV-00111 (S.D. Tex. filed Nov. 21, 2005).

entitled to the relevant benefits. By representing that these individuals were eligible for benefits, Fried claims West ISD defrauded the government.

West ISD filed a motion for summary judgment, arguing that Fried's claims were barred because his allegations were based on publicly disclosed information and Fried was not an original source of the information. The district court granted the motion. Fried filed a timely appeal.

DISCUSSION

A. Standard of Review

We review the grant of a motion for summary judgment de novo, and we apply the same standard as the district court, "viewing the evidence in a light most favorable to the non-movant." Fruge ex rel. Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir. 2003).

B. False Claims Act

The False Claims Act is designed to permit "suits by private parties on behalf of the United States against anyone submitting a false claim to the government." Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 941 (1997); 31 U.S.C. § 3729 et seq. The Act "promot[es] private citizen involvement in exposing fraud against the government," while at the same time, "prevent[s] parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." United States ex. rel. Reagan v. East Texas Med. Ctr., 384 F.3d 168, 174 (5th Cir. 2004) (internal citations omitted).

To prevent "parasitic suits" the Act prohibits a relator from pursuing an action – and strips federal courts of subject matter jurisdiction over the claim – when the allegations of fraud are based on information that has been publicly disclosed in a "criminal, civil, or administrative hearing, in a congressional, administrative, or Governmental Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the

information." 31 U.S.C. § 3730(e)(4)(A); Rockwell Int'l Corp. v. United States, 127 S. Ct. 1397, 1405-07 (2007). Thus, a relator is prohibited from bringing a claim under the FCA when the claim is "based on" information that has been "publicly disclosed" unless the relator is an "original source" of the information. Reagan, 384 F.3d at 173.

(a)    Were Fried's claims based on a "public disclosure"?

The district court held that Fried's claims were based on publicly disclosed information. On appeal Fried argues that the district court misapprehended the nature of his claim. Specifically, Fried alleges that while information about the "last day" exemption program was publicly disclosed, the specific allegations or transactions of fraudulent claims by West ISD were not disclosed until Fried revealed the conduct.

To the contrary, the record shows that the very essence of the allegations made by Fried had been publicly disclosed on several occasions prior to Fried's suit in 2005. For example, the General Accounting Office received an inquiry through its FraudNET system in 2002 which questioned the use of the "last day" exemption by Texas school districts. As a result of this inquiry, that Office issued a report on the programs (including their "potential for abuse") in August 2002. U.S. Gov't Accountability Office, Revision to the Government Pension Offset Exemption Should Be Reconsidered (2002) (presented to the H. Comm. on Ways and Means, S. Comm. on Soc. Security). In addition, Congressional hearings were held in 2003 and 2004 in which the loophole was debated – and its use by Texas school districts was specifically noted. H.R. 4391, The "Public Servant Retirement Protection Act": Hearing on H.R. 4391 Before the Subcomm. on Social Security of the H. Comm. on Ways and Means, 108th Cong. (2004); Social Security Provisions Affecting Public Employees: Hearing Before the Subcomm. on Social Security of the H. Comm. on Ways and Means, 108th Cong.

(2003). Finally, West ISD's program itself was disclosed in trade publications and on the internet.

Thus, much of Fried's information duplicates what was uncovered in governmental investigations. Further, a large section of the evidentiary basis of Fried's claims is the information received pursuant to the Texas Public Information Act (the Texas equivalent to the federal Freedom of Information Act). This court has explicitly stated that a response to a public records request constitutes a "public disclosure" under the FCA. Reagan, 384 F.3d at 176. In fact, we have held that if a qui tam action is "even partly based upon public allegations or transactions" then the jurisdictional bar applies. United States ex rel. Fed. Recovery Servs., Inc. v. E.M.S., Inc., 72 F.3d 447, 451 (5th Cir. 1995). Even if Fried uncovered some nuggets of new, i.e., non-public, information, his claims of fraud are based at least in part on allegations already publicly disclosed. Therefore, we hold that Fried's qui tam suit is based on publicly disclosed information. His claims thus are barred unless he can show that he is the original source of the information underlying his claim.

        (b)     Was Fried the "original source" of the information underlying his claim?

An "original source" is someone with "direct and independent knowledge of the information" which forms the basis of his claims, who provides the information to the Government before filing suit.[2] 31 U.S.C. § 3730(e)(4)(B); Reagan, 384 F.3d at 177. "In order to be 'direct,' the information must be firsthand knowledge. In order to be 'independent,' the information known by the relator cannot depend or rely on the public disclosures." United States ex rel. Findley v. FPC-Boron Employees' Club, 105 F.3d 675, 690 (D.C. Cir. 1997).

---

[2] Fried provided the Government the information he had before filing suit. After receiving Fried's information the Government declined to intervene in the action.

Fried argues his professional experience with the Social Security Administration and the information he acquired after conducting his own independent investigation into the use of the "last day" exemption by West ISD make him an "original source" of the information underlying his fraud claim.

As an initial matter, the record must show that Fried did more than apply his expertise to publicly-disclosed information:

> second-hand information may [not] be converted into "direct independent knowledge" simply because the plaintiff discovered through investigation or experience what the public already knew. Instead, the investigation or experience of the relator either must translate into some additional compelling fact, or must demonstrate a new and undisclosed relationship between disclosed facts, that puts a governmental agency "on the trail" of fraud, where that fraud might otherwise go unnoticed.

Reagan, 384 F.3d at 179. Fried particularly focuses us on the information he obtained through conversations and email exchanges with West ISD's business manager. He posed as either a retiring teacher or someone seeking other employment. Through his sleuthing, Fried discovered that under the "last day" exemption a teacher could work 6.5 hours and receive social security coverage whereas someone not participating in the program would not be able to obtain social security benefits unless they worked over 30 hours. These are the "direct" and "independent" allegations he asserts.

This is not the type of direct or independent knowledge contemplated by the False Claims Act. Fried merely received information about a program that had been publicly disclosed and hotly debated. Fried's argument that his allegations are unique because they relate to this school district's fraud is also insufficient. Fried argues that without the information he received through his independent investigation, the manner in which the "last day" exemption was being implemented by West ISD would have gone undetected by the Social Security Administration. The record belies this contention. Every aspect of the

"last day" exemption program was well known – including its potential for abuse by Texas school districts. The burden was on Fried to show that the information and allegations he discovered were "qualitatively different information than what had already been discovered" and not merely the "product and outgrowth" of publicly disclosed information. Fed. Recovery Servs., Inc., 72 F.3d at 452. Fried has not met this burden.

For these reasons the district court correctly held that Fried was not an "original source" under the False Claims Act. The judgment of the district court is AFFIRMED.