**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 2, 2012

Lyle W. Cayce
Clerk

No. 11-30271

GEORGE D. STENNETT,

Plaintiff-Appellant

v.

PREMIER REHABILITATION, LLC, SCOTT  MARKSTROM, JAMES
AARON JOUBERT, JR., PIN MARK ENTERPRISES, LLC, BIONET
MEDICAL, LLC, JLM BILLING SOLUTIONS, LLC, JOUBERT
MANAGEMENT, LLC, & HOME ORTHOTIC & PROSTHETIC
ENTERPRISES, LLC,

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana
U.S. Dist. Ct. No. 3:08-cv-00782

Before STEWART, CLEMENT and GRAVES, Circuit Judges.

PER CURIAM:[*]

Relator-appellant, George DeWain Stennett, filed this *qui tam* case
pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729, against defendants-
appellees James Aaron Joubert, Jr., Premier Rehabilitation Hospital, LLC

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-30271

("Premier"), Bionet Medical, LLC ("Bionet"), JLM Billing Solutions, LLC ("JLM Billing"), Joubert Management, LLC ("Joubert Management"), Scott Alan Markstrom, Pin Mark Enterprises, LLC ("Pin Mark"), and Home Orthotic & Prosthetic Enterprises, LLC ("HOPE") (collectively "Hospital"). The magistrate judge issued a detailed report and recommendation to dismiss Stennett's causes of action against the Hospital. After reviewing the magistrate judge's report and considering Stennett's proposed amended complaint, the district court granted the Hospital's motion to dismiss Stennett's complaint with prejudice for failure to state a claim. For the reasons stated herein, we AFFIRM.

## Facts and Procedural History

In March 2007, Stennett commenced his service as the Administrator of Premier Rehabilitation Center ("PRC") in Monroe, Louisiana. As the Administrator, Stennett oversaw Premier's financial practices, including but not limited to its billing and reimbursement practices, and its various business relationships. During his tenure, Stennett claims to have discovered that Premier's billing practices allegedly violated various provisions of the Medicaid Act, 42 U.S.C. §§ 1396 - 1396v, and the Health Insurance for the Aged Act ("Medicare Act"), 42 U.S.C. §§ 426 and 1395 - 1396d. Stennett also claims to have subsequently notified Joubert and Markstrom of this discovery.

From June 25 through June 29, 2007, the State of Louisiana conducted an Annual Licensing Survey, and completed an in-depth site survey, audit, inspection and examination of Premier's records and files pursuant to the State of Louisiana Recovery Audit Contractor program. In the resulting public audit report dated June 29, 2007 ("Government Audit Report"), the State of Louisiana noted multiple deficiencies regarding Premier's operational compliance with the applicable Medicare and Medicaid regulations. Premier subsequently addressed these operational deficiencies. In September 2007, Joubert and Markstrom terminated Stennett.

No. 11-30271

Stennett served the United States with a copy of his complaint, along with his written disclosure statement, in this *qui tam* case.[1] The government declined to intervene. The magistrate judge issued a report, which recommended, *inter alia*, that (1) the Hospital's motion to dismiss for failure to state a claim should be granted, and (2) Stennett's claims against the Hospital should be dismissed with prejudice, subject to Stennett's right to seek leave of court to amend his complaint with a proposed pleading that cures the deficient allegations against the Hospital. Prior to the district court's judgment, Stennett sought leave to amend and proposed a more detailed amended complaint. Nonetheless, the district court ultimately concluded that:

> Plaintiff's amended factual allegations fail to allege, with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure, that Plaintiff is the "original source" of the information forming the basis of the complaint or that any of the Defendants acted with the requisite scienter to establish a cause of action under the [FCA], 31 U.S.C. § 3729. Plaintiff's Amended Complaint is simply devoid of any detailed allegations concerning the content of actual bills and/or claims submitted to the Government, nor are there any allegations sufficient to demonstrate that any of the defendants knew the alleged falsehoods would be material to the Government's decision to pay a claim. *See* §§ 3729(a)(1)-(3); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009); *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869 (5th Cir. 2008).

### Standard of Review

This court reviews a district court's ruling on a motion to dismiss *de novo*. *United States ex rel. Marcy v. Rowan Co., Inc.*, 520 F.3d 384, 388 (5th Cir. 2008); *see also Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

---

[1] An FCA complaint is first served on the government and remains under seal for sixty days while the government decides whether to intervene and take over the action. 31 U.S.C. § 3730(b)(2).

No. 11-30271

## Analysis

### I.    False Claims Act

"'Qui tam' is an abbreviation for *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who as well for the king as for himself sues in this matter.'" *Grubbs*, 565 F.3d at 184 n.5 (citing BLACK'S LAW DICTIONARY 1262 (7th ed. 1999)).    The FCA "provides for civil suits brought by both the Attorney General and by private persons, termed *relators*, who serve as a '*posse of ad hoc deputies to uncover and prosecute frauds against the government.*'" *Id.* (emphasis added).    Depending upon the extent of a relator's contribution to the complaint, the relator is entitled to receive between a 10 and 30 percent share of any recovery obtained on behalf of the government.  *Id.*

### II.    Civil Actions for False Claims

31 U.S.C. 3730(e)(4)(A) directs federal courts to dismiss a *qui tam* action or claim 'if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed–

> (i)  in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation;
> (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

The Supreme Court has provided definitive guidance on assessing FCA complaints.    "The [FCA], 31 U.S.C. §§ 3729-3733, eliminates federal-court jurisdiction over actions under § 3730 of the Act that are based upon the public disclosure of allegations or transactions 'unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.'" *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 460 (2007) (determining that the Federal Government contractor did not qualify as the

No. 11-30271

original source of the information).  Likewise, the Supreme Court outlined a three-prong test:  (1) whether there has been a "public disclosure" of allegations or transactions, (2) whether the *qui tam* action is "based upon" such publicly disclosed allegations, and (3) if so, whether the relator is the "original source" of the information. *Graham Cnty. Soil & Water Conservation Dist. v. United States*, 130 S. Ct. 1396, 1400 (2010).

Stennett filed his original complaint on June 3, 2008 and his proposed amended complaint on February 11, 2011.  Both complaints state that the Government Audit Report serves as the primary foundation on which Stennett admittedly based his allegations.  Clearly, the bases of Stennett's allegations are derived from public information.

> A.    *Whether there has been a "public disclosure" of allegations or transactions.*

The Hospital contends that Stennett's allegations in his original complaint and in his proposed amended complaint were publicly disclosed in the Government Audit Report regarding Premier's operations.  Stennett does not dispute that the State of Louisiana conducted a survey in June 2007.  In fact, the Government Audit Report was the product of a periodic inspection done by the State of Louisiana Survey Agency to gather information about Premier's compliance with the applicable Medicare and Medicaid regulations.  Portions of the report are attached to the complaint, and therefore, may be considered by the court.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (when considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments).  Indeed, there already had been a "public disclosure" of the Hospital's transactions by the State of Louisiana in the Government Audit Report.  Therefore, here, the answer to the "public disclosure" prong of the *Graham* test is a resounding yes.  *See United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004).

No. 11-30271

B.    *Whether the qui tam action is "based upon" such publicly disclosed allegations.*

This court has "held that if a *qui tam* action is 'even partly based upon public allegations or transactions' then the jurisdictional bar applies." *United States ex rel. Fried v. West Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008). The claims alleged in a *qui tam* suit are deemed "based upon" the publicly disclosed allegations when both sets of allegations are substantially similar. *United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 668 F. Supp.2d 780, 796-97 (E.D. La. 2009). Here, an application of the first and second parts of the Supreme Court's *Graham* test to Stennett's claims resulted in the magistrate judge's correct finding that Stennett's claims are barred because the underlying allegations and transactions on which they are based were publicly disclosed and were substantially similar to, and admittedly based upon, the publicly disclosed transactions. Stennett's complaint and exhibits provide strong and compelling support for the magistrate judge's findings and the subsequent district court order. Therefore, this *qui tam* action is "based upon" previously, publicly-disclosed information, and Stennett's claims are barred unless Stennett qualifies as an "original source." *See id.*

C.    *Whether the relator is the "original source" of the information.*

The issue for this prong of the analysis is whether Stennett had direct and independent knowledge of the transactions upon which he bases his allegations. "'[O]riginal source' means an individual who either (i) prior to a public disclosure . . . has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (ii) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). The term "direct" requires "knowledge derived from the source

without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others." *Reagan*, 384 F.3d at 173-74. Direct knowledge contemplates knowledge obtained from actually viewing source documents, or first hand observation of the fraudulent activity that provides the grounds for the *qui tam* suit. *Branch*, 668 F. Supp.2d at 796-797. A relator's "independent" knowledge does not derive by the public disclosure. *Id.* Although the relator need not show that he knew about the fraud before the public disclosures, his prior knowledge of the information, upon which he based his complaint, may help demonstrate that he obtained the information independent of the public disclosure. *Id.* at 801-802. "Under this approach, we are required to 'look to the factual subtleties of the case before [us] and attempt to strike a balance between those individuals who, with no details regarding its whereabouts, simply stumble upon a seemingly lucrative nugget and those actually involved in the process of unearthing important information about a false or fraudulent claim.'" *Reagan*, 384 F.3d at 177.

Here, Stennett provided a copy of his original complaint and written disclosure statement to the United States, which, in turn, declined to intervene. The magistrate judge correctly found, and the district court affirmed, that Stennett's complaint fails to demonstrate that he was an original source for the transactions that form the bases for his claims. Stennett alleges that he did not become aware of the regulations regarding billing practices or their applicability to Premier and its satellite facilities until after he reviewed the Government Audit Report. In an undated timeline that Stennett attached to his complaint, he indicated that he "discovered [on June 16, 2007] that [Intensive Outpatient Psychiatric ('IOPs')] were not operating legally and gave notice to Jimmy Joubert about this. His remarks were 'I take care of IOPs.'" However, according to the Government Audit Report, Stennett stated that he "knew nothing about the IOPs . . ."

No. 11-30271

Finally, Stennett claims that the Hospital improperly billed Medicare for multiple occupational and physical therapy sessions without the requisite oversight, but fails to make any factual allegations to show that he was the original source of this information. Instead, the exhibits provided by Stennett in his complaint demonstrate that Stennett only became aware of the irregularities after reviewing the previously publicly-disclosed sources.

Stennett's qui tam action thus fails to satisfy the Supreme Court's Graham test since: (1) prior to Stennett's actions, there had already been a 'public disclosure' of the Hospital's noncompliance with Federal regulations in the Government Audit Report; (2) Stennett's allegations are 'based upon' the public disclosure of the information contained in that Government Audit Report; and, (3) Stennett was not the 'original source' of the information contained in that Government Audit Report.

## Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment in favor of the Hospital and dismissing Stennett's claims.