# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10884
consolidated with No. 14-10063

United States Court of Appeals
Fifth Circuit

**FILED**

August 4, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA, ex rel, CURTIS LOCKEY; CRAIG MACKENZIE,

Plaintiffs - Appellants

v.

CITY OF DALLAS; DALLAS HOUSING AUTHORITY,

Defendants - Appellees

Appeals from the United States District Court
for the Northern District of Texas
U.S.D.C. No. 3:11-CV-354

Before JOLLY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

Curtis Lockey and Craig MacKenzie (collectively, "Relators") brought this *qui tam* action against the City of Dallas ("the City") and the Dallas Housing Authority ("DHA") (collectively, "Defendants") pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–33. The district court granted summary judgment in favor of Defendants, dismissing the Relators' claims pursuant to the FCA's public disclosure bar because it found there was a public disclosure of the allegations and transactions on which the complaint is based and that

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the Relators were not an original source. Thereafter, the Relators filed a motion pursuant to Federal Rule of Civil Procedure 60(b)(2), which was denied. Relators appealed both decisions, and the appeals were consolidated. We AFFIRM both the grant of summary judgment and the denial of Rule 60(b)(2) relief.

## I.  Background

### A.  *The Defendants' Regulatory Obligations*

The U.S. Department of Housing and Urban Development ("HUD") grants federal funding to units of local government for the purpose of "providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income." 42 U.S.C. §§ 5301(c), 5303. Because the City receives grants from HUD, it is annually required to submit various reports and certifications to HUD, including a certification that it will "affirmatively further fair housing [("AFFH")], which means that it will conduct an analysis to identify impediments to fair housing choice within the jurisdiction [("AI")], take appropriate actions to overcome the effects of any impediments," and maintain records of the analysis and actions taken. 24 C.F.R. § 91.225(a)(1). In a similar fashion, the DHA is also required to certify that it will AFFH. *See* 24 C.F.R. § 903.7(o).

Since 1985, pursuant to the action *Walker v. City of Mesquite*, No. 3:85-CV-1210 (N.D. Tex.), the United States District Court for the Northern District of Texas has monitored the DHA's compliance with its obligations under the programs it administers, including its obligation to AFFH. The City and HUD were parties to the *Walker* litigation, and a consent decree entered into in that case also required the City to AFFH and submit records of its actions to the court, the parties, and a special master. While operating under this consent decree, the City completed AIs in 1994 and 1998. The 1998 AI and the City's

efforts to AFFH were challenged in the *Walker* litigation through the "Plaintiffs' Motion to Require City to Affirmatively Further Fair Housing Desegregation."  The City also completed a separate AI in 2007.

*B.  Relators' Personal Experiences*

In 2007, the Dallas City Council approved a conditional development agreement with Relators for redeveloping a 32-story office building in Downtown Dallas into a housing complex (the "LTV Project").  Despite the City initially approving $102 million in bond funding, construction never began on the project and the available funding lapsed.  The Relators allege that city officials made statements indicating their disapproval of the project due to the Relators' proposed amount of low-income housing in the building.  Primarily, the Relators allege that the Director of Economic Development for the City told them that "Downtown Dallas is not the right place for low-income housing" and that "low-income housing is not part of the vision for Downtown Dallas."  From their interactions with the City, the Relators "came to the conclusion that the City was actively discouraging the development of low-income housing available for people of color outside of the Southern Sector" of the City and that "the City was not promoting housing integration, but rather was furthering segregation."  To corroborate their conclusion, Relators embarked on a fifteen-month investigation that involved compiling data and performing analyses of DHA properties, Low-Income Housing Tax Credit project locations, and City plans and reports.

In 2010, Relators filed a formal complaint with HUD against the City, alleging discriminatory housing practices by the City.  This administrative action, styled "*1600 Pacific LP v. City of Dallas*," HUD Case Nos. 06-10-0449-4, -6, -8, -9, was ongoing at the time the district court dismissed this case, but, as discussed more fully below, has since resulted in a HUD Letter of Findings against the City.

The Relators have not had any personal experiences with the DHA itself, and the HUD administrative action did not involve the DHA.

*C. Procedural Background*

In February of 2011, Relators filed this action on behalf of the United States, alleging that the City and DHA violated 31 U.S.C. § 3729 by making false certifications and submitting false claims for federal housing funds. After the United States decided not to intervene, the Relators served the Defendants with a forty-page amended complaint, which generally alleges that the Defendants certified that they were AFFH while failing to conduct a proper AI. The complaint quotes extensively from the HUD Fair Housing Planning Guide ("HUD Guide") and explains how the Defendants have not complied with HUD's guidelines on how properly to conduct an AI. It alleges that the City's 1993, 1998, and 2007 AIs were deficient for failing to analyze various impediments in accordance with the HUD regulations and the HUD Guide.

The complaint also alleges that the City encouraged discriminatory housing practices and, therefore, failed to AFFH but did not include this impediment its AIs. This section contains the only reference to Relators' personal experiences with the City, a passing paragraph in a lengthy complaint.

As to the DHA, the complaint alleges that, in completing its Public Housing Agency Plan, the DHA "falsely certified its compliance with civil rights and fair housing laws as well as its obligations to AFFH." It also alleges that the DHA was complicit with the violations committed by the City.

The Defendants filed motions to dismiss arguing, *inter alia*, that the district court lacked subject-matter jurisdiction under the FCA's public disclosure bar. *See* § 3730(e)(4). The parties appended substantial evidence to their briefing on the motions to dismiss, and the district court converted the motions to summary judgment motions. The court granted summary judgment

for the Defendants, holding that there was a public disclosure of the allegations or transactions underlying the complaint and that the Relators were not an original source of the information.

Relators timely appealed. While briefing in this court was ongoing, Relators filed a Rule 60(b)(2) motion to set aside the judgment in the district court, seeking an indicative ruling pursuant to Rule 62.1. *See* FED. R. CIV. P. 60(b)(2) & 62.1. Relators argued that a recently issued HUD Letter of Findings of Non-Compliance against the City and recent news articles constituted newly discovered evidence that made clear that they were an original source. HUD's letter of findings concluded that the City was "in noncompliance with Title VI of the 1964 Civil Rights Act, Section 109 of the Housing and Community Development Act of 1974, and Section 504 of the 1973 Rehabilitation Act." The district court denied the Relators' Rule 60(b)(2) motion, finding that the newly discovered evidence was cumulative and would not change the court's decision. Relators timely appealed the denial of their motion, and the two appeals were consolidated.

## II. Standard of Review

A challenge under § 3730(e)(4)'s public disclosure bar "is necessarily intertwined with the merits and is, therefore, properly treated as a motion for summary judgment." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011) (citation and internal quotation marks omitted). We review a grant of summary judgment de novo. *Id.* Summary judgment is proper if, viewing the evidence in the light most favorable to the non-movant, there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.*; *see* FED. R. CIV. P. 56(a).

We review a district court's denial of relief under Rule 60(b) for abuse of discretion. *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005). A

Nos. 13-10884 & 14-10063

district court abuses its discretion if it bases its decision on an erroneous view of the law or a clearly erroneous view of the evidence. *Id.*

## III. Discussion

The FCA imposes monetary liability on any person who knowingly presents a false claim for payment to the federal government or knowingly makes a false statement material to a false claim. *See* § 3729(a)(1). The FCA authorizes private individuals to bring actions on behalf of the United States to enforce its provision, *see* § 3730(b); however, it bars certain private actions that involve publicly disclosed allegations, *see* § 3730(e)(4) (the "public disclosure bar"). The prior version of the public disclosure bar provided that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions" unless "the person bringing the action is an original source of the information" or the Attorney General. 31 U.S.C. § 3730(e)(4)(A) (2006). Relators argue that, because they are an original source, the district court erred in holding that their claims were barred by this provision.[1]

Under the prior version of the public disclosure bar, an original source is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section." § 3730(e)(4)(B). Here, the determination turns on the "knowledge" prong

---

[1] In 2010, as part of the Patient Protection and Affordable Care Act, the public disclosure bar was amended such that the jurisdictional language was eliminated and other language was modified. *See* 31 U.S.C. § 3730(e)(4) (2012). The parties agreed below and on appeal that the prior version of the public disclosure bar applied to any conduct of the Defendants that occurred prior to July 22, 2010. *See, e.g.*, *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 914–18 (4th Cir. 2013). The parties dispute whether the current version of the public disclosure bar applies to the minimal conduct of the Defendants that was alleged to have occurred after July 22, 2010. Because we conclude, *infra*, that Relators' arguments under the current version of the public disclosure bar also fail, we need not resolve this dispute.

because there is no dispute on appeal that Relators voluntarily provided the information to the Government prior to suit. *Id.* The direct and independent knowledge inquiry focuses on the Relators' knowledge underlying the specific allegations of the complaint. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 470–71 (2007).

Direct knowledge is "firsthand knowledge," *United States ex rel. Fried v. West Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008), that was "derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others," *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 177 (5th Cir. 2004) (citation and internal quotation marks omitted). Similarly, independent knowledge is knowledge that does not depend or rely on public disclosures. *See Fried*, 527 F.3d at 442–43; *Reagan*, 384 F.3d at 177. The burden is on the Relators to show that "the information and allegations [they] discovered were qualitatively different information than what had already been discovered and not merely the product and outgrowth of publicly disclosed information." *Fried*, 527 F.3d at 443 (citation and internal quotation marks omitted).

The Relators attempt to meet their burden by pointing to two categories of knowledge: (1) knowledge personally learned from their LTV Tower project;[2] and (2) knowledge learned from their further investigation. In *Reagan*, we considered and rejected a similar argument that a relator's minimal personal

---

[2] Relators' personal experiences with the City regarding the LTV Project do not support an original source determination as to the Relators' claims against the DHA. The Supreme Court has held that "[§] 3730(e)(4) does not permit jurisdiction in gross just because a relator is an original source with respect to some claim." *Rockwell*, 549 U.S. at 476 (explaining that "§ 3730(e)(4) does not permit such claim smuggling"). Relators admit they have no personal experience with the DHA. Their claims against the DHA depend solely on their investigative knowledge and the alleged relationship between the DHA and the City.

knowledge, when combined with her investigation of publicly disclosed information, was sufficient to make her an original source. *See* 384 F.3d at 178–79; *see also Fried*, 527 F.3d at 443 (rejecting a similar investigation argument).　There, the relator's personal experiences in her position of employment caused her to become suspicious of certain financial irregularities, 384 F.3d at 171–72, and led her to investigate by "piecing together fragments of documentation through [Freedom of Information Act] requests, interviews, and review of documents in the state archives," *id.* at 178 (internal quotation marks omitted).　We found that the relator's knowledge was "almost entirely indirect" because it was "based on research and review of public records, not, with minor exceptions, her own observation." *Id.* at 178–79.　We also found that her knowledge was not independent because it was "derived almost entirely from information that has been publicly disclosed." *Id.* at 178.　We thus held that she was not an original source. *Id.* at 179–80.

*Reagan* controls here.　The Relators' knowledge of the information underlying their complaint is "almost entirely indirect" because it is "based on research and review of public records, not, with minor exceptions, [their] own observation." *Id.* at 178–79.　The Relators' personal experiences with the City on the LTV Project form the basis for only one paragraph in their 40-page complaint and serve as but one example of the impediments that Relators allege the Defendants failed to analyze in their AIs.　As the district court observed, "most of Relators' complaint is simply regurgitations of HUD published guidelines, census data, publicly disclosed reports, information disclosed by news media, and other information disclosed in statutory sources." The overwhelming majority of the complaint is thus based, not on the Relators' personal experiences with the City, but on their research of publicly disclosed information.　Accordingly, the Relators knowledge is not independent because it is "is derived almost entirely from information that has been publicly

disclosed." *Id.* at 178.

Relators nonetheless argue that they are an original source because their investigation put HUD "on the trail" of the City's alleged fraud, relying on the following passage from *Reagan*:

> It is true that some other circuits have held that a relator may meet the "direct and independent knowledge" requirement by contributing her own investigative efforts and experience to develop allegations of fraud. These cases, however, do not mean that second-hand information may be converted into "direct and independent knowledge" simply because the plaintiff discovered through investigation or experience what the public already knew. Instead, the investigation or experience of the relator either must translate into some additional compelling fact, or must demonstrate a new and undisclosed relationship between disclosed facts, that puts a government agency "on the trail" of fraud, where that fraud might otherwise go unnoticed.

384 F.3d at 179 (citations omitted). Relators put talismanic significance on the "on the trail" language which is not there. But even using their interpretation, Relators' investigation does not make them an original source pursuant to this avenue because their investigation did not translate the publicly disclosed information "into some additional compelling fact" or "demonstrate a new and undisclosed relationship between disclosed facts." *Id.*

It was already extensively alleged through public disclosures that the City and DHA were failing to live up to their obligations to AFFH by not including certain impediments in their AIs and not remedying impediments. Allegations such as those made by Relators were publicly disclosed, among other places, in news articles, in the long-running *Walker* litigation, to which HUD, the City, and the DHA were parties, and in a review of the City's actions by the Texas Affordable Housing Project. The Relators' investigation produced information that mirrored the prior publicly disclosed allegations that the Defendants were not AFFH because they were failing properly to analyze

9

impediments and were not promoting housing integration. *See Fried*, 527 F.3d at 443 ("[The relator] merely received information about a program that had been publicly disclosed and hotly debated."). The "burden [is] on [the Relators] to show that the information and allegations [they] discovered were qualitatively different information than what had already been discovered and not merely the product and outgrowth of publicly disclosed information." *Id.* (citation and internal quotation marks omitted). Relators fail to meet that burden. The district court correctly concluded that the Relators were not an original source under the prior version of § 3730(e)(4)(B).

We also reject the Relators' argument that the district court erred in concluding that they were not an original source under the amended version of the public disclosure bar when considering alleged conduct by Defendants that occurred after July 22, 2010. *See* 31 U.S.C. § 3730(e)(4)(B) (2012). First, Relators have waived any arguments as to the application of the amended statute by arguing on appeal only that which they failed to argue in the district court.[3] Second, for the reasons stated above, we find no merit in the Relators' argument on appeal that they have "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." *Id.*

---

[3] Under the current version of the FCA, an original source is "an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) [sic] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B) (2012). The district court found that Relators failed to meet either prong. In their briefing before the district court on the motion to dismiss, the Relators did not mention the "knowledge prong," arguing only that they were an original source pursuant to the "prior voluntary disclosure prong." Therefore, arguments as to the application of the "knowledge prong" are waived. *See Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 510 (5th Cir. 2005). Conversely, Relators have abandoned any arguments as to the "prior voluntary disclosure prong" by arguing on appeal only that they are an original source pursuant to the "knowledge prong." *See Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010).

While the language in the current version of the statute differs from the "direct and independent knowledge" language in the prior version of the statute, 31 U.S.C. § 3730(e)(4)(B) (2006), on the facts of this case, the outcome is the same.[4]

Finally, the district court did not abuse its discretion in denying Relators' Rule 60(b)(2) motion. To warrant relief under Rule 60(b)(2) a movant must demonstrate, *inter alia*, "that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment." *Hesling*, 396 F.3d at 639 (citation and internal quotation marks omitted). Here, the "newly discovered evidence" consisted of a HUD Letter of Findings of Non-Compliance against the City, which was the culmination of the HUD administrative action initiated by the Relators, as well as news articles reporting on the letter. HUD found that the City was "in noncompliance with Title VI of the 1964 Civil Rights Act, Section 109 of the Housing and Community Development Act of 1974, and Section 504 of the 1973 Rehabilitation Act." The focus of the letter is on specific decisions by the City that were purportedly either discriminatory or did not comply with regulatory housing requirements. Most prominently, the letter discusses the City's decision not to approve the LTV Project. The subject of the letter differs from that of this action because it does not discuss the Defendants' alleged failure to AFFH by not properly analyzing various impediments. Given this differing focus, the Relators' personal experiences with the City on the LTV Project feature much more prominently in the HUD administrative action than they do in the Relators' complaint in this action

Relators argue that this evidence demonstrates that they are an original source because it "shows beyond doubt that Relators placed HUD on the trail

---

[4] Because we affirm the district court's grant of summary judgment pursuant to § 3730(e)(4), we do not address the Defendants' argument that this action is also precluded by § 3730(e)(3)'s related litigation bar.

of Dallas's wrongdoing with information qualitatively different from anything the public previously knew." We first note that, because it does not discuss or implicate the DHA, the HUD letter would not have produced a different result as to whether the Relators were an original source of the information underlying their allegations against the DHA. As to the City, the HUD letter simply shows that HUD found the allegations in the Relators' *administrative* complaint to have merit; it does not offer insight into whether the Relators had "direct" and "independent" knowledge of the information underlying their separate complaint in this FCA action, which is predominantly based on an investigation of publicly disclosed information. The new evidence does not change the fact that the Relators' knowledge underlying their complaint in this action is "based on research and review of public records, not, with minor exceptions, [their] own observation." *Reagan*, 384 F.3d at 178–79. Nor does it show that the investigation underlying the complaint in this action transformed the publicly disclosed information "into some additional compelling fact" or "demonstrate[d] a new and undisclosed relationship between disclosed facts." *Id.* at 179; *see also Fried*, 527 F.3d at 443. Since this newly discovered evidence would not clearly have produced a different result, the district court did not abuse its discretion in denying the Relators' Rule 60(b)(2) motion. *See Hesling*, 396 F.3d at 639.

AFFIRMED.