# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 12, 2021

Lyle W. Cayce
Clerk

No. 20-20071

UNITED STATES OF AMERICA, *ex rel.*, STEPHANIE SCHWEIZER,

*Plaintiff—Appellant*,

*versus*

CANON, INCORPORATED; CANON BUSINESS SOLUTIONS, INCORPORATED; CANON USA, INCORPORATED,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-582

Before WIENER, ELROD, and HIGGINSON, *Circuit Judges*.
STEPHEN A. HIGGINSON, *Circuit Judge*:

Stephanie Schweizer appeals the district court's dismissal of her *qui tam* claims under the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733, alleging that Canon[1] overcharged the United States for office equipment and provided non-compliant products. The district court dismissed Schweizer's

---

[1] Schweizer does not challenge the district court's conclusion that Canon USA, Inc.—a wholly owned subsidiary of Canon, Inc. and parent entity of Canon Business Solutions Inc.—is the only defendant that was "served and has appeared" in this case.

No. 20-20071

claims under the FCA's public disclosure bar, *id.* § 3730(e)(4), because they were based upon, or were substantially the same as, Schweizer's prior FCA suit which the government settled years earlier.  We AFFIRM.

## I. Background

The FCA imposes civil liability on any person who "knowingly presents . . . a false or fraudulent claim for payment or approval," or "knowingly makes [or] uses . . . a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(A), (B).  The FCA permits private parties to enforce the statute by filing *qui tam* suits "in the name of the Government," *id.* § 3730(b)(1), and incentivizes such whistleblower suits by awarding a substantial share of the fraudulent payments that are recovered, plus attorney's fees and costs, *id.* § 3730(d).

However, the FCA limits the types of actions that private plaintiffs can bring, including those for which the government is a party (the "government action bar"[2]) or for which the allegations have already been publicly disclosed (the "public disclosure bar"[3]).  These limitations prevent rewarding "parasitic" suits which "add nothing to the exposure of fraud." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 332 (5th Cir. 2011) (quoting *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004)); *see also Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294–95 (2010) (describing Congress' "effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic

---

[2] "In no event may a person bring an action . . . which is based upon allegations or transactions which are the subject of a civil suit . . . in which the Government is already a party."  31 U.S.C. § 3730(e)(3).

[3] 31 U.S.C. § 3730(e)(4).  *See* Part III, *infra*.

No. 20-20071

lawsuits"). At issue in this appeal is whether Schweizer's claims against Canon are barred by these limitations.

Schweizer filed her first FCA suit in 2006 against Océ North America Inc. Océ sold printers, copiers, and related services to the government. Schweizer worked as a General Services Administration (GSA) contracts manager for Océ from November 2004 until her termination in December 2005. In that role, Schweizer alleged that she noticed "irregularities," including that the United States was overpaying Océ for copiers and services, and that its products were manufactured in non-compliant countries including China. After Schweizer tried to correct these and other non-compliance problems, Océ fired her.

Schweizer then sued Océ in the District Court for the District of Columbia asserting FCA claims for (1) violating the contract's "Price Reductions Clause" because it overcharged the government for the same products it sold to non-government customers; and (2) violating the Trade Agreements Act (TAA) by selling products that were made in China and other non-TAA-compliant countries.[4]

The government intervened and, over Schweizer's objections, settled the *qui tam* claims with Océ in 2009. Océ agreed to pay the government $1,200,000 in exchange for release of the asserted FCA claims from April 1, 2001, to December 31, 2008.[5] In 2013, the district court approved the

---

[4] *See United States ex rel. Schweizer v. Océ, N.V. et al.*, No. 1:06-cv-648-RCL (D.D.C. Apr. 7, 2006). Schweizer also asserted claims for wrongful retaliation under 31 U.S.C. § 3730(h).

[5] The settlement agreement's "Covered Conduct" further specified that it included the fraud claims arising from the three contracts Schweizer asserted in her complaint against Océ, including the GS-25F-0060M ("60M") contract. The agreement also awarded 19% of the settlement amount, or $228,000, to be split between Schweizer and her co-plaintiff as the *qui tam* relators.

settlement and dismissed the *qui tam* claims against Océ.[6]  Prior to the Océ action becoming final, Canon acquired Océ in 2012.

On January 5, 2016, Schweizer subsequently commenced this action—her second FCA suit—alleging that Canon fraudulently overcharged the government for printers, copiers, and other office equipment, and that such products were produced in non-compliant countries.  Schweizer alleges that Canon, after it acquired Océ, continued the fraud by (1) violating its contracts' Price Reduction Clauses, and (2) providing non-TAA compliant products that were manufactured in China and other non-designated countries, in violation of the FCA, 31 U.S.C. § 3729(a)(1).[7]

Specifically, Schweizer asserts that Canon violated the terms of the same GSA contracts alleged in her first FCA suit which Schweizer says Canon novated after acquiring Océ, and also violated the same Price Reduction and TAA clauses in additional contracts.  For example, Schweizer asserts that Canon novated, and continued to violate, the GS-25F-0060M ("60M") contract, which Schweizer asserted in her first FCA suit against Océ, and for which the government specifically settled in 2009.  She alleges that Canon continued the fraudulent scheme "between January 2010 and January 2016," which includes both before and after Canon acquired Océ in 2012, and after the government settled the prior Océ action for claims

---

[6] *United States ex rel. Schweizer v. Océ N. Am.*, 956 F. Supp. 2d 1, 3 (D.D.C. 2013). At first, the district court erroneously granted the settlement without conducting the requisite fairness hearing under § 3730(c)(2)(B).  *See United States ex rel. Schweizer v. Océ N.V.*, 677 F.3d 1228, 1237, 1241 (D.C. Cir. 2012), *rev'g* 681 F. Supp. 2d 64 (D.D.C. 2010), *and rev'g* 772 F. Supp. 2d 174 (D.D.C. 2011).

[7] As she alleged in her complaint against Océ, Schweizer also alleges that Canon conspired to defraud the government by making false or fraudulent claims for payment in violation of 31 U.S.C. § 3729(a)(1)(C).

between April 1, 2001, to December 31, 2008.  Though Schweizer was no longer employed with Océ or Canon since her termination in 2005, she claims to have "reviewed the modification history of the GSA Contracts involved here," and based on "conversations with several Océ employees" and "information and belief," the production "either continued in the Océ facilities in China and Malaysia, or were moved to the manufacturing facilities that Canon already owned in China."

The government declined to formally intervene in Schweizer's second FCA suit.  Canon moved to dismiss the complaint, asserting that Schweizer's claims were barred by the government action and public disclosure bars, and alternatively failed to allege fraud with particularity under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Schweizer opposed the motion in full, and the United States filed a statement of interest in opposition as to Canon's interpretation of the government action bar, but noted that "[t]he United States takes no position on any other aspect of Canon's Motion."

Following further summary judgment briefing, the magistrate judge recommended dismissing the claims because, based on the prior Océ litigation and settlement, both the government action and public disclosure bars applied to Schweizer's claims against Canon.  Both the United States and Schweizer timely objected.  The United States, as in its prior statement, objected only to the government action bar, but took "no position on the Magistrate Judge's Memorandum and Recommendation as it relates to the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4), an alternative grounds for dismissal of relator's case."  Schweizer objected to both grounds for dismissal.

The district judge adopted in part the magistrate judge's recommendation that Schweizer's claims were publicly disclosed and

No. 20-20071

therefore barred Schweizer's complaint against Canon. However, the district judge declined to reach whether the government action bar applied, overruling that portion of the recommendation. The district judge also denied Schweizer's subsequent Rule 59(e) motion for reconsideration. This appeal timely followed.

## II. Standard of Review

We review motions for summary judgment de novo. *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011). A challenge under the FCA's public disclosure bar "is necessarily intertwined with the merits and is, therefore, properly treated as a motion for summary judgment." *Id.* (internal quotation marks and citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III. Discussion

The primary issue on appeal is whether Schweizer's claims against Canon were barred by the FCA's public-disclosure provision. The current version of the FCA's public disclosure bar states:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--
>
>> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>>
>> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>>
>> (iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) [sic] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4) (2010).[8]

As a threshold matter, Schweizer argues that the public disclosure bar cannot apply because the government objected to dismissal of Schweizer's claims, and thus was "opposed by the Government." *Id.* § 3730(e)(4)(A).

---

[8] This version of the public disclosure bar resulted from an amendment that became effective on July 22, 2010. *See* Patient Protection and Affordable Care Act, Pub. L. No. 111–148, 124 Stat. 119, 901, § 10104(j)(2) (Mar. 23, 2010); *see also Jamison*, 649 F.3d at 326 n.6. Relevant here, the prior version of the public disclosure bar applied only where the subsequent action was "*based upon* the public disclosure of allegations or transactions," § 3730(e)(4)(A) (2006) (emphasis added), rather than being "*substantially the same* allegations or transactions," § 3730(e)(4)(A) (2010) (emphasis added). The parties state that this change is immaterial to resolving the present case, and we therefore need not decide whether the amendment materially alters our public-disclosure analysis. *Compare, e.g.*, *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 743–44 (10th Cir. 2019) (concluding that the amended language is consistent with the court's prior application of the public disclosure bar and "confirms the vitality of our pre-2010 standard"), *and id.* at 744 n.6 (citing cases), *with United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 917 (4th Cir. 2013) (previously interpreting "based upon" to mean "that the plaintiff must have 'actually derived' his knowledge of the fraud from the public disclosure," but concluding that "[a]s amended, however, the public-disclosure bar no longer requires actual knowledge of the public disclosure, [and] instead applies 'if substantially the same allegations or transactions were publicly disclosed'" (quoting 31 U.S.C. § 3730(e)(4)(A) (2010))). Moreover, our conclusion is the same under either version.

Not so. Both of the government's filings below expressly stated that it opposed *only* the government action bar and that it took no position as to dismissal of Schweizer's claims under the public disclosure bar. Moreover, as Schweizer concedes, she "has not located caselaw"—and we have likewise found none—to support her novel interpretation that *any* opposition, no matter how limited, forecloses dismissal under the public disclosure bar.

As to whether Schweizer's claims are barred under the FCA's public-disclosure provision, this court traditionally applies "a three-part test, asking '1) whether there has been a "public disclosure" of allegations or transactions, 2) whether the qui tam action is "based upon" such publicly disclosed allegations, and 3) if so, whether the relator is the "original source" of the information.'" *Jamison*, 649 F.3d at 327 (quoting *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450 (5th Cir. 1995)). "[C]ombining the first two steps can be useful, because it allows the scope of the relator's action in step two to define the 'allegations or transactions' that must be publicly disclosed in step one." *Id.*[9]

We have previously applied the FCA's public disclosure bar when "a *qui tam* action is 'even partly based upon public allegations or transactions' . . . . Even if [the relator] uncovered some nuggets of new, *i.e.*, non-public, information, [the relator's] claims of fraud are based at least in part on allegations already publicly disclosed." *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008) (quoting *United States ex rel. Fed.*

---

[9] On appeal, Schweizer no longer argues that she is an "original source," and has therefore abandoned that argument. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal."). Thus, if Schweizer's claims against Canon were publicly disclosed through the Océ litigation, they are barred.

*Recovery Servs., Inc. v. E.M.S., Inc.*, 72 F.3d 447, 451 (5th Cir. 1995)). We have also emphasized that "[a] guiding query is whether 'one could have produced the substance of the complaint merely by synthesizing the public disclosures' description' of a scheme." *Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 293 (5th Cir. 2012) (quoting *Jamison*, 649 F.3d at 331).

When considering whether a relator's action is "based upon" publicly disclosed allegations or transactions, this court applies a two-part burden-shifting approach. First, the "defendants must first point to documents plausibly containing allegations or transactions on which [relator's] complaint is based." *Jamison*, 649 F.3d. at 327. Second, "to survive summary judgment, [the relator] must produce evidence sufficient to show that there is a genuine issue of material fact as to whether [her] action was based on those public disclosures." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).[10]

Before the district court, Canon pointed to documents from the Océ litigation, including the operative Océ complaint, the district court's 2013 order approving the Océ settlement, and news articles reporting on the litigation. Schweizer does not challenge that these documents constitute "public disclosures" under the statute, which include disclosures made in either "a Federal . . . civil . . . hearing in which the Government or its agent is a party" or "the news media." 31 U.S.C. § 3730(e)(4)(A)(i), (iii).

We agree with both the magistrate and district judges below that Canon satisfied its burden of showing that Schweizer's allegations against Canon are "based upon" the allegations and transactions asserted in the Océ

---

[10] While Schweizer appeals the district court's application of this burden-shifting framework, neither party disputes that it is the proper framework for considering whether Schweizer's claims were publicly disclosed here.

litigation. Schweizer asserts that Canon committed the same fraudulent scheme she alleged against Océ. At least one of the contracts asserted (and settled) against Océ—the "60M" contract—is the identical contract asserted in her suit against Canon. Moreover, her complaint against Canon draws largely, if not exclusively, from her complaint against Océ. At oral argument, Schweizer's counsel conceded that her FCA claims against Canon involve the "same contracts" and the "same scheme" asserted in the Océ litigation.[11]

Thus, the allegations against Canon are more than "even partly based upon" the Océ allegations or transactions, *Fried*, 527 F.3d at 442 (internal quotation marks and citation omitted), and "one could have produced the substance of the [Canon] complaint merely by synthesizing the public disclosures' description of the [Océ] scheme," *Jamison*, 649 F.3d at 331.

We next consider whether, to survive summary judgment, Schweizer "produce[d] evidence sufficient to show that there is a genuine issue of material fact as to whether [her] action was based on those public disclosures." *Id.* at 327. She has not.

Schweizer primarily argues that her FCA claims against Canon are not barred because Canon is a different entity from Océ, and that it perpetuated the fraud over a later time period and with additional contracts. In support, she points to the Océ settlement agreement, which agreed only to settle claims against Océ between April 2001 to December 2008; a 5-pargraph declaration describing her role as the relator in the Océ litigation; and the allegations in her operative complaint against Canon describing Canon's novation of Océ's contracts and subsequent entry into additional contracts.

---

[11] Schweizer's counsel also conceded that Schweizer only broadly alleges that Canon, like Océ, failed to comply with its government contracts.

But none of this creates a genuine issue of material fact that Schweizer's complaint against Canon was "based upon," or is "substantially the same" as, the Océ litigation. Nor do allegations that Canon violated *additional* GSA contracts establish otherwise. *See United States ex rel. Colquitt v. Abbott Lab'ys*, 858 F.3d 365, 374 (5th Cir. 2017) ("[C]ontributing more of the same does not change the public character of a relator's allegations: [Relator] 'cannot avoid the [public disclosure] bar simply by adding other claims that are substantively identical to those previously disclosed.'" (quoting *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 451 (5th Cir. 1995))); *see also Jamison*, 649 F.3d at 329 (noting that public disclosures may be "sufficient" if they "'set the government on the trail of the fraud' and ensure that the government will not 'need to comb through myriad transactions performed by various types of entities in search of potential fraud'" (quoting *In re Nat. Gas Royalties*, 562 F.3d 1032, 1042–43 (10th Cir. 2009))).[12]

Schweizer alternatively argues that because Canon allegedly "restarted" the fraudulent scheme, her second FCA suit "exposes a different wrongful scheme that does not implicate the Public Disclosure Bar." For this point, Schweizer relies primarily on the Sixth Circuit's

---

[12] We also reject Schweizer's argument that the district court erred by applying the incorrect summary judgment standard under *Jamison*. The district court twice rejected this argument, which Schweizer fails to address in her briefing let alone identify any error on appeal. *See Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (failure to identify an error in the district court's order "is the same as if [appellant] had not appealed that judgment"). Schweizer's alternative argument that she was "denied discovery" is also belied by the record: she conceded before the district court that discovery was only necessary "to oppos[e] Canon's motion as to the sufficiency of the pleadings," but that "the public-disclosure-bar and government-action-bar issues are ripe for resolution at this time under Rule 56," and her Rule 56(d) discovery motion was denied without prejudice to renewal.

decision in *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905 (6th Cir. 2017).

In *Ibanez*, the relator-plaintiffs filed suit against two pharmaceutical companies asserting FCA claims arising from their off-label promotion, and related kickback scheme, of the antipsychotic drug Abilify. *Ibanez*, 874 F.3d at 911–12. Several years earlier, the pharmaceutical companies had settled "nearly identical allegations" and, as part of their settlements, entered into five-year Corporate Integrity Agreements requiring them to "ensure compliance with the FCA, the Anti-Kickback Statute, and cease off-label promotion of Abilify." *Id.* at 912. The relators—both former sales representatives employed from 2005 to 2010—asserted that despite these agreements in 2007 and 2008, the defendants "continued to promote Abilify off-label and offer kickbacks to physicians who prescribed it." *Id.* The district court dismissed the allegations under, *inter alia*, the public disclosure bar because the "relators' alleged scheme 'closely track[s]' the pre-agreement promotion scheme." *Id.* at 919 (alteration in original).

The Sixth Circuit reversed, noting that "it was error for the court to hold that this resemblance alone called for dismissal under the public disclosure bar." *Id.* The court emphasized that "allegations that the scheme either continued despite the agreements or was restarted after the agreements are different." *Id.* Thus, the court concluded, "to the extent that relators are able to describe with particularity post-agreement, improper promotion of Abilify, the mere resemblance of those allegations to a scheme resolved years earlier is not by itself enough to trigger the public disclosure bar." *Id.* However, the court cautioned that its reasoning was applicable "only to the extent that the new allegations are temporally distant from the previously resolved conduct." *Id.* at 919 n.4.

No. 20-20071

As both the magistrate judge and district judge concluded, *Ibanez* is readily distinguishable.  To start, Schweizer's claims are not "temporally distant": the government settled with Océ in 2009 for claims spanning 2001 through 2008, and Schweizer's claims against Canon begin the following year in 2010.  Moreover, Schweizer fails to describe with "particularity" any post-settlement fraud other than Canon's novation of Océ's prior contracts or generalized allegations that Canon violated the *same* terms of similar, and in at least one case, identical, contracts.  *See id.* at 919.  As the district court emphasized, Schweizer "failed to bring forward summary judgment evidence detailing Canon's alleged fraudulent scheme and its scope to even permit the [c]ourt to draw an inference of a new or continued fraud."[13]

*    *    *

For the foregoing reasons, the district court's summary judgment order is AFFIRMED.[14]

---

[13] Notably, too, the *Ibanez* relators were still employed at the defendant pharmaceutical companies from 2005–2010, which spanned the companies' 2007 and 2008 entry into compliance agreements as well as the alleged continued violations of the off-label promotions scheme between 2005 and 2015.  *Ibanez*, 874 F.3d at 911–12.  By contrast, Schweizer was only employed at Océ until 2005, well before the government settled the FCA claims against Océ.

[14] Because we affirm the dismissal of Schweizer's claims under the public disclosure bar, we need not reach the parties' alternative arguments regarding the government action bar or adequacy of the pleadings.